Argued and submitted November 7, 1996, affirmed February 19, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## JOE NEIL GEORGE,
*Appellant.*

## (9508-36621; CA A91745)

934 P2d 474

Raymond S. Tindell argued the cause and filed the brief for appellant.

Eleanor E. Wallace, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals his conviction for robbery in the second degree. ORS 164.405. He assigns error to the admission of a codefendant's hearsay statements, the denial of his motion for judgment of acquittal, and the trial court's comments during jury instructions. He also raises numerous constitutional challenges to Ballot Measure 11, under which he received a 70-month sentence. We affirm.

Defendant and two codefendants were involved in the theft of two cases of beer from a Plaid Pantry convenience store on August 18, 1995. At the time of arrest, codefendant Love told a police officer that he waited in his car across the street while defendant and codefendant Franco went into the store to steal beer. When defendant and Franco ran out of the store with a clerk in pursuit, Franco told Love to fire his gun into the air. Love said that he fired two shots to frighten the clerk and to keep him from identifying Love's car. At trial, the clerk also testified that either Franco or defendant had yelled, "Shoot him."

Love was released after posting a security deposit of $7,000. He did not show up for a November 21 court appearance, and a bench warrant was issued for his arrest. On December 15, Steverson, an investigator for the District Attorney's office, was asked to locate Love. He ran computer checks on three different databases, learning Love's Social Security number and home address, and that Love was on "warrant status." From Love's employer, Steverson learned that Love had been "terminated" on October 11. The apartment manager at Love's home address said that Love and his brother had moved out on November 1 and that he had sent letters regarding back rent to two forwarding addresses. The letters had been returned indicating that Love and his brother "no longer lived at that address."

Steverson testified that, in his 30 years of law enforcement experience, when a person "jumps bail" of the amount involved here, is not working and cannot be located in one day, then he "may not even be in the area." He took no further steps to find Love, who was not located before trial.

The trial court admitted Love's declaration to the officer as a statement against interest. OEC 804(3)(c).[1] A jury found defendant guilty of robbery in the second degree. On appeal, defendant assigns error to the court's finding that Love was unavailable.

An out-of-court declaration may be admitted as a statement against penal interest only if the declarant is "unavailable as a witness." OEC 804(3)(c). A person is "unavailable" if, among other things, he or she is absent from the hearing and the statement's proponent has unsuccessfully attempted "by process or other reasonable means" to secure the person's attendance or testimony. OEC 804(1)(e); *State v. Nielsen*, 316 Or 611, 618, 853 P2d 256 (1993).

The proponent must make a good faith effort to locate the declarant and secure his or her attendance at trial. *State v. Montgomery*, 88 Or App 163, 165-66, 744 P2d 592, *rev den* 304 Or 548 (1987). "The degree of effort which constitutes due diligence in attempting to secure an unavailable witness depends upon the particular circumstances presented by each case." *State v. Anderson*, 42 Or App 29, 32, 599 P2d 1225, *rev den* 288 Or 1 (1979), *cert den* 446 US 920 (1980). The proponent bears the burden of establishing unavailability, which is a preliminary question of fact for the trial court. *Nielsen*, 316 Or at 618. We view the record in a manner most consistent with the trial court's ruling, accepting reasonable inferences and credibility choices. *Id*.

In *Nielsen*, the state made a sufficient showing of unavailability based on its unsuccessful efforts to locate the declarant before trial. There, officers tried to subpoena the declarant at her parents' home and at a second address she had given the police, asked people at those addresses for

---

[1] OEC 804(3) provides, in part:

"The following are not excluded by [OEC 802, the rule against hearsay] if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

leads and checked a third location given by residents at the second address. Officers also made warrant checks weekly and on the morning of trial. The Supreme Court found "no indication that police failed to follow up on any available lead concerning [the declarant's] whereabouts." 316 Or at 618-19.

In *Montgomery*, we held that the state employed due diligence in trying to locate a witness where police made repeated attempts to serve a subpoena issued three weeks before trial, checked the witness' previous addresses, requested information from patrol officers about the witness, and had the state police contact her parents. Two days before trial, officers also issued a state-wide law enforcement bulletin asking for information on the witness' whereabouts, made inquires to a national computerized information network and generally continued looking up to the day of trial. 88 Or App at 166.

■    Although the search in this case was not as thorough as those in *Nielsen* and *Montgomery*, the state nonetheless made a good faith effort to locate Love. Steverson checked Love's work and home addresses and learned that Love had been fired more than nine weeks before and had moved out of his apartment three weeks after that, leaving apparently false forwarding addresses. Coupled with Love's forfeiture of the $7,000 security deposit, Steverson drew a reasonable conclusion that Love had fled the area. Computer checks confirmed that Love had not been picked up on the bench warrant. We conclude that any further investigation would have been futile, and a good faith effort does not require the performance of a futile act. *State v. Kitzman*, 323 Or 589, 610-11, 920 P2d 134 (1996); *State v. Stevens*, 311 Or 119, 141, 806 P2d 92 (1991). Because evidence in the record supports the trial court's availability finding, Love's declaration was properly admitted as a statement against interest. OEC 804(3)(c).[2]

---

[2] "Unavailability" under OEC 804 is not necessarily the same as under the confrontation clauses of Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution. *Stevens*, 311 Or at 139 n 14. Nonetheless, without deciding how the respective inquiries differ, we hold that the state's showing was sufficient to establish Love's unavailability under both the Oregon and United States Constitutions. *Nielsen*, 316 Or at 623, 625.

■       Defendant's second assignment of error addresses the following jury instruction given by the trial court:

> "We have certain rules in our courts and one is that if a witness is not available and that the state can prove that they have tried, gone to the limits trying to locate this witness, say the witness is in warrant status or they've tried every address they have. They've tried every job he's had, taken his social security number and punched it through the computer and they can't find him.
>
> "* * * * *
>
> "We've had a hearing on that and we have sworn testimony and I have decided that legally Love was not an available witness. He's not here. They can't find him. They can't go to get him. So when I make that ruling, the law permits his statements will be admitted when he has made his statement against his interest, what we call penal interest, criminal interest and that's an exception to what we call the hearsay rule. * * * [T]hen the jury can use his testimony in the case just as if he was here and you scrutinize his confession and statements just the same as you scrutinize if he was sitting talking to you."

After the jury began deliberations, defendant took the following exception:

> "[Y]ou got into some of the facts of what the state, you know, lengths they might try to go through and they've kind of searched the ends of the earth, which kind of paints a picture for the jury that we weren't allowed to have our side of that in."

Defendant argues on appeal that mention of Love's "warrant status" was prejudicial because it associated defendant with a fugitive. Defendant did not raise that issue below and the "failure to except to the trial court's instruction on a specific theory generally bars appellate relief on that theory." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

Defendant also argues that the court mischaracterized the state's efforts, because Steverson did not check every job Love had ever held, nor did he run Love's Social Security number through a computer. Although that issue is similar to what defendant argued below, it does not require reversal. The court's characterization of the state's efforts to locate

Love had no bearing on any issue before the jury. The unavailability of a witness is a factual question for the trial court, *Nielsen*, 316 Or at 618, and we fail to see how the court's comments otherwise could have influenced the jury.

Defendant next assigns error to the denial of his motion for judgment of acquittal, arguing that there was insufficient evidence connecting Love's use of a firearm to defendant's theft of the beer. In reviewing the sufficiency of evidence in a criminal case after conviction, we must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *State v. Langley*, 314 Or 247, 267-68, 839 P2d 692 (1992), *adhered to* 318 Or 28, 861 P2d 1012 (1993).

■ Defendant was convicted of robbery in the second degree. ORS 164.405(1) provides, in part:

> "A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:
>
> "* * * * *
>
> "(b) Is aided by another person actually present."

ORS 164.395 provides, in part:

> "(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft the person uses or threatens the immediate use of physical force upon another person with the intent of:
>
> "(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.]"

The state tried its case on an accomplice theory. Viewed in the light most favorable to the state, the evidence established that defendant, in the course of committing theft, was aided by another person actually present, *i.e.*, Love, who threatened the use of force with the intent of overcoming the clerk's resistance, *i.e.*, firing a gun in the air to frighten the clerk. The jury could have found the elements of robbery in the second degree beyond a reasonable doubt, and the motion for judgment of acquittal was properly denied.

Defendant lastly assigns error to the imposition of a Measure 11 sentence. He makes several constitutional challenges to the initiative's mandatory minimum sentencing provisions, which are codified at ORS 137.700.[3]

"When a person is convicted of one of the offenses listed in subsection (2) of this section and the offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever under ORS 421.120, 421.121 or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section." ORS 137.700(1).

The mandatory sentence for robbery in the second degree is 70 months. ORS 137.700(2)(r).

■    We address defendant's state constitutional claims before reaching his arguments under the federal constitution. *State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996). Defendant first contends that his sentence is disproportionate to the offense in violation of Article I, section 16, of the Oregon Constitution, which provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

A penalty violates the proportionality clause when it "is so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992), citing *Cannon v. Gladden*, 203 Or 629, 632, 281 P2d 233 (1955). Defendant apparently argues that the sentence here fails that test because it does not reflect mitigating factors such as criminal history.[4]

---

[3] Defendant's conduct occurred in August 1995, after legislative amendments to Measure 11 took effect. *See State v. Lawler*, 144 Or App 456, 458 n 3, 927 P2d 99 (1996).

[4] Defendant does not argue that Measure 11 authorizes a more severe penalty for a lesser-included crime than for the greater offense. *See, e.g., State v. Shumway*,

■ In *State v. Teague*, 215 Or 609, 336 P2d 338 (1959), the Supreme Court held that a 12-year sentence for forgery coupled with a three-year consecutive term for uttering and publishing a false check did not "shock the moral sense of all reasonable men" even though the defendant had no substantial criminal record.[5] *Id.* at 611. If that sentence is not sufficiently "shocking," then neither is 70 months for second degree robbery, particularly when a firearm has been used.

■ Defendant next argues that Measure 11 violates the "privileges and immunities" clause of the Oregon Constitution because it denies a class of criminal defendants the possibility of a downward departure sentence. Article I, section 20, provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Defendant presumes that those convicted of Measure 11 crimes constitute a "class" under the privileges and immunities clause. He is incorrect.

> "In evaluating whether a class exists under Article I, section 20, we must first determine whether the class 'is created by the challenged law itself' or 'by virtue of characteristics * * * apart from the law in question.' * * * Classes of the first type are entitled to no special protection and, in fact, are not even considered to be classes for the purposes of Article I, section 20." *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den* 498 US 819 (1990) (citations omitted).

The only purported "class" affected by Measure 11 is created by the measure itself and not by characteristics apart from the measure. Therefore it is not a class at all. Accordingly, Article I, section 20, does not apply.

Defendant next argues that Measure 11 violates the separation of powers principles of Article III, section 1, and

---

291 Or 153, 164, 630 P2d 796 (1981) (25 years for murder; 15 or 20 years for aggravated murder); *Cannon*, 203 Or at 632-33 (life imprisonment for assault with intent to commit rape; 20 years for completed rape).

[5] Although *Teague* addressed whether the sentence was "excessive" under Article I, section 16, it employed the same proportionality standard used in *Cannon* and *Shumway. See also State v. Tuck*, 1 Or App 516, 519, 462 P2d 175 (1970) (relying on *Teague* for "proportionality" analysis), *cert den* 402 US 982 (1971).

Article VII, section 1, of the Oregon Constitution. We rejected those arguments in *State v. Jackson/Hoang*, 145 Or App 27, 32-33, 929 P2d 323 (1996). His assertion that Measure 11 abolishes the right to allocution and the right to counsel at sentencing was answered in *State v. Parker*, 145 Or App 35, 38-39, 929 P2d 327 (1996).

■■■ We now turn to defendant's federal constitutional claims. By denying the opportunity to present mitigating evidence, defendant contends, Measure 11 violates the Eighth and Fourteenth Amendments to the United States Constitution. He cites *Eddings v. Oklahoma*, 455 US 104, 102 S Ct 869, 71 L Ed 2d 1 (1982), and *Lockett v. Ohio*, 438 US 586, 98 S Ct 2954, 57 L Ed 2d 973 (1978), which held that the Eighth Amendment requires the opportunity to present mitigating evidence at sentencing.

However, *Eddings* and *Lockett* were capital cases that limited their holdings to death penalty prosecutions. *Harmelin v. Michigan*, 501 US 957, 995, 111 S Ct 2680, 115 L Ed 2d 836 (1991). In *Harmelin*, the U.S. Supreme Court upheld a mandatory life sentence without the possibility of parole for cocaine possession, specifically rejecting the argument that "it is 'cruel and unusual' to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors." 501 US at 994. Measure 11 does not apply to capital crimes, and its foreclosure of mitigating circumstances does not violate the Eighth Amendment.[6]

Affirmed.

---

[6] Although defendant also asserts a violation of the Fourteenth Amendment's Due Process Clause, he makes no argument to support that assertion, and we decline to address it. *Woolstrum v. Board of Parole*, 89 Or App 600, 604, 750 P2d 509, *rev den* 305 Or 672, *cert den* 488 US 861 (1988).