Argued and submitted May 21, reversed and remanded December 3, 1997, petition for review denied February 17, 1998 (326 Or 465)

## STATE OF OREGON,
*Appellant,*

*v.*

## GEORGE RENATO FRANCO,
*Respondent.*

### (C95-08-36622; CA A92107)

950 P2d 348

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Vicki R. Vernon argued the cause and filed the brief for respondent.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant is charged with one count of robbery in the first degree, ORS 164.415(1), and one count of robbery in the second degree, ORS 164.405(1). Before trial, the state moved to admit hearsay statements by codefendant Love, an unavailable declarant, as statements against Love's penal interest, pursuant to OEC 804(3)(c). After an evidentiary hearing, the trial court admitted portions of Love's declaration in which he inculpated only himself, excluding the parts in which Love inculpated himself and defendant. The state appeals from the trial court's pretrial order excluding the mixed-blame portions of Love's declaration.[1] ORS 138.060(3). We reverse.

The facts, from the testimony of the arresting officer, are undisputed. At about 2:30 a.m. on August 18, 1995, Gresham Police Officer Ball saw a car traveling unusually fast and decided to follow it. Love, defendant, and George were inside the vehicle. As Ball was following the car, he received a dispatch call, reporting that a robbery had occurred at a convenience store and that shots had been fired, and describing the car and three persons involved. Because the description matched the car and persons Ball was following, he stopped the car and, with the aid of other officers, separated and handcuffed Love, defendant and George. Ball placed Love, the driver, in his patrol car.

While checking the car for other passengers, officers observed two cases of beer matching the description of the stolen items. Ball then returned to his vehicle, read Love his *Miranda* rights, which Love said he understood, and asked Love about the incident. Love denied having knowledge of the robbery and told Ball that the beer came from a friend's house "from a long time ago." With Love's consent, officers searched the car and found a leather jacket, containing .45 caliber rounds, but no gun.

The officers took the suspects to the Gresham Police Department and placed them in separate holding cells. Love

---

[1] Defendant does not cross-appeal the court's admission of the other portions of Love's declaration.

remained in his cell for approximately 90 minutes. Ball then took Love to an interview room and asked Love again to tell him "what had happened." Ball described their exchange:

"Initially I spoke with Mr. Love and again asked him if he remembered his rights and still understood his rights, which he said he did. * * * I initially told him that I felt that I knew exactly what had happened on that evening and that I didn't really want to waste time listening to lies, but if he wanted to talk to me and tell me what had happened, that I would be willing to talk with him.

"And I believe I did tell him that I felt, my opinion was that if he was honest with me it would look better if and when it went to court that he was at least being honest and attempting to take responsibility for what had happened."

Ball did not offer to "work any deals with the District Attorney's Office" or "help [Love] with a plea bargain" in exchange for his statements. During the interview, described by Ball as "pleasant," Ball was the only officer present, was unarmed, and did not handcuff Love. After hesitating for between five and eight minutes, Love gave the following account.

Love, defendant and George were at a friend's house when defendant and George suggested that they get some beer. When Love told them that he would not pay for it, defendant and George suggested that they make a "beer run," *i.e.*, that they steal beer from a convenience store.

Love agreed to drive defendant and George to a convenience store. He parked across the street in a church parking lot, placing his car between two others so it would be hidden from view. Defendant and George went into the store. A few minutes later, they ran out, carrying two cases of beer, with a clerk in pursuit. As they jumped into the car, defendant told Love to "buck in the air"—*i.e.*, shoot his gun into the air to scare the clerk. Love obliged, firing one or two rounds. Later, as Love, defendant, and George were being followed by Ball, they decided to "ditch" the gun. George threw it out the passenger window.

After making his statements, Love showed Ball where George had thrown the gun and Ball recovered the weapon. The police also recovered a shell casing from the spot

where Love said he parked during the robbery. When Ball asked Love where he had driven after leaving the church parking lot, Love replied that he did not know the street names and that he had visited Gresham only a few times before that evening. Ball believed that response was untruthful because he had seen Love's car in Gresham "numerous times."

Shortly before defendant's trial, the state determined that it could not locate Love. *See State v. George*, 146 Or App 449, 934 P2d 474 (1997) (describing circumstances). Accordingly, the state made a pretrial motion to admit Love's statements against defendant. After determining that Love was unavailable pursuant to OEC 804(1)(e), the trial court ruled that Love's statements regarding the gun were admissible but that the balance of his account was not. The trial court relied on the following three factors: (1) there was "a substantial period of custody predating the inquiry[;]" (2) Love's declaration was "in response to an officer who suggest[ed] that it [was] to [Love's] interest to come up with something positive to say[;]" and (3) Ball concluded that Love "wasn't being completely truthful to him as to how often he had been [in Gresham]." The trial court explained:

> "[I]f he thought somebody had him dead in the water for * * * shooting the gun—'I shot the gun and we ditched it,' that seems to me to be quite reliable. * * * I just think the details of this are things that he had time to think about, and he was encouraged to come up with something that would help him out, and the obvious thing to try to do in that circumstance if you're not going to be truthful is try to weave that which is known with that which is unknown in a way that inures to your benefit.
>
> "* * * * *
>
> "I would let the gun statement in and the description of its disposal, because that's directly incriminating and carries with it indicia of reliability."

The state assigns error to the trial court's order suppressing the mixed-blame portions of Love's declaration. The state argues that "Love's statements are admissible under

OEC 804(3)(c), and their use at trial would not violate defendant's state and federal constitutional rights of confrontation." We agree with the state.

■        We first determine the admissibility of Love's mixed-blame statements under OEC 804(3)(c). OEC 804(3)(c) provides in part that a statement is not to be excluded if,

> "at the time of its making * * * [it] so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

If the declaration meets the statutory requirements, we must then determine whether its admission violates defendant's rights to confrontation guaranteed by Article I, section 11, of the Oregon Constitution[2] and the Sixth Amendment to the United States Constitution.[3] *State v. Wilson*, 323 Or 498, 510, 918 P2d 826 (1996), *cert den* ____ US ____ , 117 S Ct 704 (1997); *State v. Nielsen*, 316 Or 611, 618, 853 P2d 256 (1993). Because the facts are not in dispute, our function is to decide whether the trial court applied legal principles correctly to those facts. *See Wilson*, 323 Or at 513 (holding that "the record supports the trial court's conclusion"); *see also Nielsen*, 316 Or at 620 (holding that "there was sufficient evidence to support a finding").

Here, Love's "unavailability" is undisputed. Consequently, our statutory analysis is limited solely to determining whether, under the circumstances, Love's declaration is in fact against his penal interest. *Wilson*, 323 Or at 510. To make that determination, the court in *Wilson* interpreted OEC 804(3)(c) to require satisfaction of two factors. First, the court required that the statement plainly be against the declarant's penal interest. *Id.* at 512. Second, the court required that the declaration be such "that a reasonable person in the declarant's position would not have made th[e]

---

[2] Article I, section 11, of the Oregon Constitution provides, in part: "In all criminal prosecutions, the accused shall have the right * * * to meet witnesses face to face."

[3] The Sixth Amendment to the United States Constitution provides, in part: In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

statements unless he believed that they were true." *Id.* at 513.

The analysis of the second factor requires an examination of the circumstances surrounding the declaration. *See Wilson,* 323 Or at 513 (examining circumstances); *see also Commentary to the Oregon Evidence Code,* quoted in Laird Kirkpatrick, *Oregon Evidence* 636 (2d ed 1989) ("Whether a statement is in fact against the declarant's interest must be determined from the circumstances of each case."). We must pay particular attention to whether the record contains evidence of an obvious fabrication or motive to fabricate. *See Nielsen,* 316 Or at 620-21 (holding that mixed-blame, in custody declaration was truly against penal interest because, in part, the record contained no substantive evidence that a "countervailing motivation" to fabricate was "in fact present").

■ Here, the trial court's analysis relied on factors that established only the *possibility* that Love had a "countervailing motivation" to fabricate his story. However, that possibility exists in all custodial interrogations and cannot by itself invalidate a hearsay confession. *See Nielsen,* 316 Or at 624 ("We decline to adopt a *per se* rule invalidating all hearsay 'confessions' made in custody[.]"). Other factors refute the possibility that Love had a motive to fabricate his story and show instead that Love's entire declaration meets the two requirements set forth in *Wilson.*

All of Love's statements show that, in context, the entire declaration was plainly against his penal interest. First, Love admitted knowledge of, and willing participation in, the robbery. Second, Love confessed to a serious aspect of the criminal episode—*i.e.,* shooting the gun in the air to frighten the pursuing store clerk.

The circumstances surrounding Love's declaration also show that a reasonable person in his position would not have made the statements unless they were true. After receiving his *Miranda* warnings, Love knew that his statement could be used in any prosecution against him. Nonetheless, he related the story even though he was not offered leniency in exchange for his statements, which would have given him an obvious reason to fabricate his story. Moreover, Love

exposed himself to the same level of criminal liability as defendant and gave a detailed account of the incident, directing Ball to the place Love parked and shot into the air, and to the actual location of the gun. There is no evidence to support the notion that Love believed that his story would help him, as the record contains no evidence that Love was unaware of the consequences he faced by making his statements or that Love knew what, if any, evidence the police had against him at that time. During the interview, Love did not act in an evasive, defensive, or combative manner and voluntarily responded to one basic, nonleading, question—"what had happened." These circumstances do not suggest that Love believed that he needed to lie to help himself.

Thus, we conclude that, under OEC 804(3)(c), Love's entire declaration is admissible as a statement against penal interest. Under the circumstances, the declaration "so far" tended to subject Love to criminal liability, rather than relieve him of it, that a reasonable person in his position would not have made the statements unless they were true.

■ ■ Notwithstanding the declaration's admissibility under the statute, Love's statement is admissible at trial only if its use would not violate defendant's confrontation rights guaranteed by Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Under Article I, section 11, the confrontation clause analysis contains two requirements: (1) declarant unavailability; and (2) adequate indicia of reliability. *Wilson*, 323 Or at 514. The second requirement can be satisfied by a showing that the statement falls within a "firmly rooted hearsay exception" or contains "particularized guarantees of trustworthiness." *Id.* (quoting *State v. Stevens*, 311 Or 119, 140-41, 806 P2d 92 (1991)).

■ The state does not argue here that a statement against penal interest falls within a "firmly rooted hearsay exception." Rather, it argues that Love's declaration contains "particularized guarantees of trustworthiness." We agree.

In *Nielsen*, the court held that a mixed-blame, in-custody declaration contained particularized guarantees of trustworthiness because "the statement [wa]s strongly against declarant's penal interest and no countervailing

motivation to fabricate [wa]s shown to be in operation." 316 Or at 623. Here, there is no evidence of a countervailing motivation to fabricate that affects the trustworthiness of Love's declaration. Love did not attempt to "shift blame" to defendant but rather exposed himself to equally serious criminal liability. Further, the record contains no evidence that Love made his statements due to intimidation or a desire to "curry favor" with the police. Accordingly, we hold that Love's declaration is admissible under the confrontation clause contained in Article I, section 11, of the Oregon Constitution.

For Sixth Amendment purposes, " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances * * * that surround the making of the statement and that render the declarant particularly worthy of belief." *Wilson*, 323 Or at 517 (quoting *Idaho v. Wright*, 497 US 805, 819, 110 S Ct 3139, 111 L Ed 2d 638 (1990)). In mixed-blame statements, we must rely more on the surrounding circumstances than on the "against penal interest" nature of the statement to support a finding of trustworthiness. *Id.*

Ball did not threaten Love or offer him leniency. Ball did not conduct a protracted interrogation, but rather, asked Love one basic question and encouraged him to tell the truth. In response, Love gave a detailed account of the incident, showing a personal knowledge of the event, including where corroborating physical evidence could be located. Further, Love admitted to knowledge of, and willing participation in, the crime, and to the use of a gun. In other words, nothing in Love's statement tended to reduce his potential punishment for the crimes described. We hold that those circumstances render Love, and his statement, particularly worthy of belief.

Because of the foregoing reasons, we hold that Love's entire declaration is admissible.

Reversed and remanded.