Argued and submitted March 17, reversed and remanded April 14, 1999

## STATE OF OREGON,
### *Appellant,*

*v.*

## SAMUEL ARTHUR SILVERMAN,
### *Respondent.*

## (964914C2 and 970116C3; CA A99377)

977 P2d 1186

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robert J. McCrea argued the cause for respondent. With him on the brief was Robert J. McCrea, P.C.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

The state appeals from a judgment imposing 10-year probationary sentences on defendant on two counts of first-degree sexual abuse. ORS 163.427. The state argues that the trial court erred in ruling that the mandatory minimum prison sentences of 75 months required by ORS 137.700 (Measure 11) were unconstitutionally cruel and unusual and in imposing probationary sentences. We agree and reverse and remand.

Defendant was charged with two counts of first-degree sexual abuse and two counts of second-degree sodomy of a boy under the age of 14 and was charged with three counts of sexual abuse in the first degree of another boy under the age of 14. All of the crimes were alleged to have occurred in the later half of 1996. Pursuant to a plea agreement, defendant pleaded guilty to one count of first-degree sexual abuse of each of the victims, and the remainder of the charges were dismissed. At sentencing, the court ruled that the mandatory minimum prison sentences of 75 months for each of the first-degree sexual abuse convictions were "cruel and inhuman" and imposed probationary sentences on both convictions.

On appeal, the state contends that the trial court erred in holding that the mandatory minimum sentences required by statute for these crimes were unconstitutionally cruel and unusual as applied to the facts of this case. Defendant responds that the issue is not reviewable and, alternatively, that the lower court correctly ruled that the mandatory minimum sentences of 75 months were cruel and unusual, as applied.

We turn first to defendant's contention that the assigned error is not reviewable on appeal. Defendant argues that, in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 607, 932 P2d 1145, *cert den* _____ US _____ , 118 S Ct 557, 139 L Ed 2d 399 (1997), the court concluded that a virtually identical question was not reviewable on direct appeal and thus was reviewable in mandamus. The state asserts that the question is reviewable under ORS 138.222(4)(c), enacted after *Huddleston* was decided, which provides that the appellate court

may review claims that a "sentencing court erred in failing to impose a minimum sentence that is prescribed by ORS 137.700[.]" Defendant responds that application of the reviewability provisions ORS 138.222(4)(c) to his case is an impermissible *ex post facto* application of the law. In *State v. DuBois*, 152 Or App 515, 954 P2d 1264 (1998), we held that ORS 138.222(4)(c) applies to pending appeals, and, in *State v. Jackman*, 155 Or App 358, 963 P2d 170 (1998), we held that application of ORS 138.222(4)(c) to cases in which the crime had been committed before the enactment did not violate the *ex post facto* provisions of either the state or federal constitutions. We therefore reject defendant's argument that the issue before us is unreviewable.

■ Article I, section 16, of the Oregon Constitution, provides: "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." A sentence violates this constitutional provision if it "is so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992). The state asserts on appeal that 75-month sentences for defendant's sex crimes against children are not "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." Defendant argued to the trial court, and asserts on appeal, that, because several mental health professionals opined that his pedophilia is treatable and that he would not be able to receive treatment if he were imprisoned, a mandatory sentence of imprisonment would be cruel and unusual.

To review this question, we must set forth some of the underlying facts that were before the sentencing court.[1] Defendant is in his late 50s and has been a social worker for many years, primarily treating preadolescent and adolescent males. The present convictions arose from a series of events that occurred in 1996. A 13-year-old friend of defendant's son reported to a therapist that defendant had, on 20 or more occasions, fondled his genitals. In a police interview, the child reported several incidents of sodomy as well. The police then

---

[1] Pursuant to ORS 137.077(1), we disclose some of the contents of the presentence investigation report because it "is necessary for legal analysis of the case."

taped a telephone call from the child to defendant in which the child told defendant that he wanted the sexual contacts to stop. Defendant agreed and expressed a concern about whether the child had told others about the sexual contacts.

Defendant was arrested on multiple charges of sodomy and sexual abuse, and, after his arrest, another friend of defendant's son came forward, stating that defendant had been making sexual advances toward the child for two years. The child reported that, on about 50 occasions, defendant had attempted to insert his hands into the child's pants. He reported that defendant had, on different occasions, unbuttoned the child's pants, asked the child to take off his swim suit, and asked the child to kiss him. The child also reported that defendant had told him that he would prefer that the child not tell anyone about what had been occurring. Defendant was charged with three more counts of first-degree sexual abuse relating to his abuse of this child, as well.

The presentence investigation revealed that numerous children had reported inappropriate sexual behaviors by defendant over many years. According to one parent, approximately 10 years before the charged incidents occurred, defendant had reached for the groin of her 10-year-old mentally retarded son during a counseling session. Another therapist reported that one of his clients, a 17-year-old male, said that defendant had asked the child to masturbate during a treatment session. Three other boys, one aged 13 and two aged 15, reported that defendant would rub and stroke their stomachs, reaching lower and lower until the children stopped him. Another mental health professional at an agency at which defendant had worked reported that there had been complaints that defendant asked children inappropriate questions about anal sex.

The record also contains information from a psychiatrist, Dr. Beebe, whom defendant had been seeing for years before the incidents that led to the current convictions, as well as information from another psychiatrist and a psychologist who evaluated defendant after the current charges were brought. Beebe described the incidents that led to the current convictions as "some inappropriate play" with defendant's son's friends, and opined that defendant had not previously

been attracted to underage boys and that he could be successfully treated on an outpatient basis and by attending Sex Love Addicts Anonymous meetings.

A psychiatrist, Dr. Kjaer, who evaluated defendant at the request of his attorney, also provided a report. That report indicates that defendant had sexual experiences with adolescent males when he himself was an adolescent and that he was arrested at age 21 for inappropriate sexual contact with a male, after which he received several years of psychotherapy. Defendant continued to receive therapy at regular intervals throughout his life and was advised by a therapist not to discuss his homosexual inclinations with his wife. Defendant reported to Kjaer that, in his therapy practice, he had treated a 10-year-old boy for sexual abuse and that, when the boy reached the age of 22, they had an affair. Kjaer opined that, because of defendant's grief and depression over the ending of the affair with the 22-year-old, he had allowed himself to become preoccupied with the victims, whom Kjaer described as "inquisitive sexual animals." Psychological testing showed that defendant was depressed, but not psychotic. Kjaer opined in his report that defendant should continue to receive treatment from his treating psychiatrist, that he should possibly attend a short inpatient treatment program, and that "the two alleged victims should be excluded from the immediate vicinity of the defendant." In his report, Kjaer further opined that it would be "unreasonable to incarcerate someone who has struggled so long privately with this disorder and now is making genuine progress towards recovery."

A psychologist, Dr. Knapp, also evaluated defendant at his attorney's request. Defendant admitted to Knapp that he had engaged in oral sex and mutual masturbation with one of the victims on five occasions. Defendant reported that he had first been arrested at age 21 after making sexual overtures to a male college student in a bathroom. He received extensive psychotherapy for many years after this incident. Defendant reported that, in 1993 or 1994, he had an affair with a 23-year-old male who had formerly been his patient when the male was 9 through 15 years of age. According to defendant, this male later developed psychological difficulties and claimed that defendant had molested him when he

had been a patient, which defendant maintained was not true. Defendant also told Knapp that "he felt it was possible to molest the young boy by whom he is currently being charged without harming the boy," that "not all molestation leads to serious damage," and that he "did not do anything to the young boy that the young boy did not want him to do." Knapp opined that defendant suffered from depression and pedophilia, would be amenable to outpatient sex-offender treatment, and could benefit from individual psychotherapy.

At the sentencing hearing, Kjaer testified that defendant's pedophilia stemmed from his sexual activity when he was 13 with other 13-year-old males, that pedophilia is best treated as an addiction, and that chemical treatments are available to eliminate most sexual behaviors. Knapp testified that defendant has been in therapy most of his life and has gone through a number of phases in which he has been suicidal and self-destructive. He testified that defendant was repulsed by his pedophilic urges but that he became increasingly helpless to resist them and that the current offenses were a result of his self-destructive tendencies. He opined that defendant had spent his years in therapy trying to deny, avoid and repress his problems, but that now that they had become public, he would be treatable in the community and would have a very low risk of reoffending. He acknowledged that his opinion was based on information provided to him that defendant had been charged with sexually abusing one boy on five occasions. Defendant's wife, a psychiatrist, testified at sentencing that defendant was a very good therapist, that he became depressed several years earlier and was mentally ill, but that, in the several months before the sentencing hearing, he no longer appeared to be mentally ill.

The sentencing court concluded that a long prison sentence would not be productive and that sentencing defendant "to the penitentiary for 75 months where there is no treatment is cruel and inhuman for one who has his mental disorders and that, without treatment, sending somebody to the Oregon State Penitentiary is cruel and inhuman."

■ We disagree with the trial court's conclusion that a 75-month prison sentence is unconstitutionally cruel and unusual given the facts of this case. We do not disagree that

it is possible that defendant would profit by further mental health treatment. However, the record shows that defendant has a history, spanning a period of over 30 years, of initiating unwanted sexual contacts. The record shows that defendant, who is a mental health professional, has been in treatment with other mental health professionals during most of this time. The record shows that there were many more incidents of abuse than the two to which defendant ultimately pled guilty. The record shows that defendant has, for many years, been a therapist for sexually abused boys, yet after the current offenses, stated that "it was possible to molest the young boy by whom he is currently being charged without harming the boy," that "not all molestation leads to serious damage," and that he "did not do anything to the young boy that the young boy did not want him to do."

The question here is not whether the probationary sentence that the trial court imposed "shock[s] the moral sense of all reasonable persons as to what is right and proper," *Isom*, 313 Or at 401, but whether the 75-month prison sentence *required by law* for these offenses is so disproportionate to defendant's offenses that it "shock[s] the moral sense of all reasonable persons as to what is right and proper." There is nothing about defendant's circumstances or mental health that makes the sentence mandated by law any more shocking when applied to defendant than when such a sentence is imposed in other cases involving first-degree sexual abuse. In fact, given defendant's age and intelligence, his professional experience working with sexually abused children, and the fact that he has already received years and years of mental health treatment apparently centered around his sexual problems, we find that there are fewer mitigating circumstances surrounding defendant's particular situation than are present in many cases.

In *State v. George*, 146 Or App 449, 934 P2d 474 (1997), we considered and rejected the defendant's argument that a 70-month mandatory minimum prison sentence for second-degree robbery was cruel and unusual, noting that, in *State v. Teague*, 215 Or 609, 336 P2d 338 (1959), the Supreme Court had held that a 12-year prison sentence for uttering a false check did not "shock the moral sense of all reasonable men." We concluded that if the sentence in *Teague* was "not

sufficiently 'shocking,' then neither is 70 months for second degree robbery, particularly when a firearm has been used." *George*, 146 Or App at 457. The same is true here: a sentence of 75 months for sexual abuse of children, particularly when the defendant is a mental health professional who treats child sex abuse victims, does not shock the conscience such that the sentence is "cruel and unusual" under Article I, section 16, of the Oregon Constitution. *See also State v. Gee*, 156 Or App 241, 244, 965 P2d 462 (1998) (90-month sentence for first-degree robbery was not unconstitutionally cruel and unusual despite the fact that the court found that defendant would respond to mental health and drug abuse treatment that would benefit him more than imprisonment); *State v. Rhodes*, 149 Or App 118, 123, 941 P2d 1072 (1997) (75-month sentence for first-degree sexual abuse was not unconstitutionally cruel and unusual, where the 15-year-old defendant had no prior record but had sexually abused his half-sister more than 20 times after being disciplined by his mother for that behavior).

■      Defendant also asserts that a 75-month prison sentence would be "cruel and unusual" under the Eighth Amendment to the United States Constitution. However, in *Harmelin v. Michigan*, 501 US 957, 111 S Ct 2680, 115 L Ed 2d 836 (1991), the Supreme Court held that a sentence of life imprisonment without the possibility of parole for possession of a controlled substance was not cruel and unusual. Given that holding, we do not believe that a sentence of 75 months imprisonment for the crime of first-degree sexual abuse against a child is cruel and unusual under the Eighth Amendment.

Reversed and remanded for resentencing under ORS 137.700.