On appellant's petition for reconsideration filed March 19 and respondent's response to petition for reconsideration filed March 26, case reargued on reconsideration August 26, reconsideration allowed; former disposition (192 Or App 603, 89 P3d 96 (2004)) withdrawn; reversed and remanded January 12, 2005

## STATE OF OREGON,
### *Respondent,*

*v.*

## COREY ANTWAN PAGE,
### *Appellant.*

### 0005-34282; A116871

104 P3d 616

Jason E. Thompson argued the cause for appellant. With him on the petition was Ferder & Casebeer, LLP.

Erika L. Hadlock, Assistant Attorney General, argued the cause for respondent. With her on the response were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Robin A. Jones, Senior Deputy Public Defender, Office of Public Defense Services, filed the memorandum of *amicus curiae*.

Before Haselton, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant was convicted of several felonies stemming from a robbery committed by two men in January 2000. He appealed, arguing that the trial court erred in admitting out-of-court statements made to a police interrogator by an unavailable witness. According to defendant, those statements were inadmissible hearsay and, further, admitting them violated his confrontation rights under the Oregon and United States constitutions. We affirmed without opinion. *State v. Page*, 192 Or App 603, 89 P3d 96 (2004). Thereafter (but before the appellate judgment issued), the United States Supreme Court decided *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), a case that significantly changed federal constitutional law regarding the admissibility of hearsay testimony in criminal trials. Defendant petitions for reconsideration in light of *Crawford*. We grant reconsideration, withdraw our former disposition, reverse and remand.

The following facts are not in dispute. Two men robbed an apartment and assaulted its two occupants. Police arrested Stevenson as a perpetrator after one of the victims identified him from a photograph. In a custodial interview with McGetrick, a police detective, Stevenson first denied having participated in the crime. Then, although refusing to name his accomplice, he admitted that he was present during the crime but only for the limited purpose of obtaining marijuana; he denied knowing that his accomplice planned a robbery and assault. Finally, he told McGetrick that the accomplice was defendant. Stevenson pleaded guilty and received assurance of a reduced sentence in exchange for his promise to testify against defendant at trial. Appearing there under subpoena, however, he refused to testify; when the court reminded him of his obligation, Stevenson replied: "I ain't testifying."

The trial court determined that this refusal established the witness's unavailability for purposes of OEC 804, the rule dealing with "[h]earsay exceptions where the declarant is unavailable." The prosecutor then made an offer of

proof to establish that McGetrick could testify about the contents of his interview with Stevenson because the testimony would relate hearsay that would be admissible under one of those exceptions: statements against the declarant's penal interest as defined in OEC 804(3)(c). That rule allows admission of hearsay statements that would subject the declarant to criminal liability when "a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Over defendant's objection, the trial court determined that the statements met the evidentiary standard. McGetrick thereafter repeated Stevenson's statements before the jury. Ultimately, the jury found defendant guilty of assault, robbery, burglary, and kidnaping.

Defendant appealed, asserting that by admitting the hearsay statements, the trial court misapplied OEC 804(3)(c) and also violated his right to confront witnesses against him as guaranteed by the Confrontation Clauses in the Sixth Amendment of the United States Constitution and its Oregon analog, Article I, section 11. We affirmed without opinion. *Page*, 192 Or App at 603.

■■ However, before the appellate judgment issued, the United States Supreme Court decided *Crawford*. That case partially overruled *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), in which the Court held that an unavailable declarant's hearsay statement does not violate the Confrontation Clause if the statement has "adequate indicia of reliability," that is, if it either falls within a firmly rooted hearsay exception or bears "particularized guarantees of trustworthiness." *Roberts*, 448 US at 66. *Crawford* rejected that rule. The Court's reasoning rested on the premise that "the principal evil at which the Confrontation Clause was directed was * * * the use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 US at 51. The Court stated:

"Where testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term

covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."

541 US at 68. In sum, as relevant to this case, *Crawford* holds that the Confrontation Clause of the Sixth Amendment precludes the use at trial of hearsay statements made during police interrogation by an unavailable witness whom the accused has not had the opportunity to cross-examine.

In his petition for reconsideration, defendant argues that the trial court violated his Sixth Amendment confrontation rights by admitting Stevenson's hearsay statements because Stevenson was unavailable, his statements were testimonial, and defendant never had the opportunity to cross-examine him. Even if defendant did not sufficiently raise a Sixth Amendment objection and therefore did not preserve error, defendant argues, the error is apparent on the face of the record and we should exercise our discretion under ORAP 5.45 to address it and reverse.

■    The state responds that defendant never adequately raised a federal constitutional objection to McGetrick's rendition of Stevenson's statements; the only objection defendant raised was based on OEC 804(3)(c). Therefore, the supposed error that defendant asks us to correct was not preserved. Further, not only is the "error" not apparent on the face of the record, it is not error at all; under the facts of this case, it is at least possible that Stevenson was not "unavailable" or that his "unavailability" was caused by defendant himself, in which case defendant cannot claim a constitutional right to confront him. *Crawford*, 541 US at 62. For the reasons that follow, we agree with the state that defendant did not preserve his claim of error, but we agree with defendant that the error was plain on the face of the record, that we should review it, and, that on review, we should reverse and remand.

Generally, "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court * * *." ORAP 5.45(1).[1] Violations of that rule

---

[1] In a legal regime where literalism reigns, ORAP 5.45(1) should be rewritten. To "preserve" means "to keep safe from * * * destruction * * * keep alive, intact, in existence * * *." *Webster's Third New Int'l Dictionary* 1794 (unabridged ed 2002).

sometimes occur when a party takes a position on appeal that it simply did not take below. At other times a violation occurs because a party does not object or otherwise call the trial court's attention to a ruling that the party then contests on appeal. The state's contention in this case partakes of both aspects of nonpreservation. It argues that defendant never took the position at trial that admitting McGetrick's testimony violated the Sixth Amendment; rather, according to the state, defendant's only position below was that, in admitting the testimony, the court ran afoul of OEC 804(3)(c). Further, when the trial court's ruling did not address the Sixth Amendment, defendant did not object.

Defendant acknowledges that he never explicitly argued to the trial court that allowing McGetrick to testify about Stevenson's statements violated defendant's federal constitutional rights; indeed, the word "constitution" does not appear in the transcript, nor does the phrase "Sixth Amendment" or "Confrontation Clause." Defendant relies instead on a theory of less direct preservation. During the extended colloquy between defense counsel, the prosecutor, and the court concerning whether to allow McGetrick's testimony, there were passing references to "particularized guarantees of trustworthiness," which is a phrase appearing in *Roberts* and subsequent cases discussing federal constitutional analysis. The phrase was also adopted in *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), in which the Oregon Supreme Court held that Oregon Confrontation Clause analysis would echo *Roberts*. Defendant also points out that the cases he cited in his argument before the trial court—*State v. Nielsen*, 316 Or 611, 853 P2d 256 (1993); *Campbell*, 299 Or 633; *State v. Jones*, 171 Or App 375, 15 P3d 616 (2000), *rev den*, 332 Or 56 (2001); *State v. Franco*, 151 Or App 472, 950 P2d 348 (1997), *rev den*, 326 Or 465 (1998)—include discussion of federal Sixth Amendment doctrine and therefore raised that issue to the trial court as a basis for exclusion.

Thus, the literal meaning of the rule is that a party on appeal cannot challenge a trial court's alleged error unless the party below has done its best to guarantee that the error was *not* corrected. What the rule means to say is that no matter claimed as error will be considered on appeal unless the *claim of error* was preserved in the lower court. It is the claim that an error occurred, not the error, that must be preserved.

Finally, defendant points out that the entire discussion about guarantees of trustworthiness, regardless of its lack of explicit reference to constitutional issues, *must* have been understood to relate to such issues because trustworthiness was not, in fact, an issue under OEC 804(3)(c). That rule contains the following caveat: "A statement tending to expose the declarant to criminal liability and *offered to exculpate the accused* is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." (Emphasis added.) Indicia of trustworthiness, in other words, are necessary only when the criminal *defendant* wants hearsay to be admitted. Thus, defendant argues, because this case involves the *state's* attempt to gain admission for *in*culpatory statements, the only issue to which trustworthiness was relevant was the Confrontation Clause.

Defendant's arguments are not without force, but we are ultimately unpersuaded. More importantly, the trial court's decision to admit Stevenson's testimony rested on state authority defining circumstantial reliability requirements under OEC 804(3)(c). Despite the presence of stray constitutional catchphrases in the transcript and some apparent confusion about when trustworthiness is relevant under the Evidence Code, the trial court ruled according to OEC 804(3)(c) and cases interpreting that provision. Nothing indicates that the court understood that it had been asked to exclude McGetrick's testimony based on the federal Confrontation Clause. When the court ruled, defendant did not raise an objection based on federal constitutional law. We therefore agree with the state that defendant did not preserve an argument based on federal constitutional law.

■ Under ORAP 5.45(1), however, this court has discretion to "consider an error of law apparent on the face of the record," even if the claim of error is unpreserved. In order to qualify as "apparent on the face of the record," the error (1) must be purely legal, (2) it must be obvious and not reasonably in dispute, and (3) its obvious erroneousness must be something we can decide without going beyond the record, without choosing between competing inferences, and without relying on any facts except those that are irrefutable. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If the error qualifies, then (and only then) we must exercise our discretion in

deciding whether or not to correct it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). Defendant contends that the court's ruling to admit McGetrick's evidence meets these three requirements and we should exercise our discretion to correct it; the state disagrees.

As a preliminary matter, the state maintained at oral argument that the "plain error" rule is superseded or qualified by the doctrine of waiver. According to the state, defendant's failure to object to the admission of Stevenson's hearsay statements as a violation of the Sixth Amendment effected a waiver of that constitutional protection, and defendant is powerless to "unwaive." We disagree for two reasons. First, the theory would have the effect of nullifying the "plain error" rule entirely; if failure to object to a ruling or make an argument amounts to a waiver that this court is powerless to disregard, then there will never be an occasion to review unpreserved error. Perhaps the state believes that waivers of arguments based on constitutional rights somehow differ so that the apparent error rule in ORAP 5.45 survives in nonconstitutional contexts, but it has not explained how or why.

■ Second, even if we were obligated to give effect to defendant's waiver, no such waiver occurred in this case. As the United States Supreme Court has stated, "There is a presumption against the waiver of constitutional rights, and for a waiver to be effective, it must be clearly established that there is an intentional relinquishment of a known right or privilege." *Brookhart v. Janis*, 384 US 1, 4, 86 S Ct 1245, 16 L Ed 2d 314 (1966) (dealing with right to confront witnesses) (internal quotation marks omitted); *accord State v. Langley*, 331 Or 430, 449, 16 P3d 489 (2000). The state points to nothing in the record, and we find nothing, indicating that defendant's failure clearly to raise a Sixth Amendment argument was a knowing and intentional relinquishment of the right guaranteed by that provision. As we discuss above, in objecting to McGetrick's testimony on evidentiary grounds, defendant used phrases more relevant to, and often used in association with, constitutional claims. Although mere mention of those phrases did not sufficiently preserve a claim of error based on the Confrontation Clause, it does not follow that defendant voluntarily and knowingly waived his Sixth Amendment rights. If anything, defendant's conflation of

constitutional and evidentiary language in his argument to exclude Stevenson's hearsay indicates some intent to protect those rights. We conclude that defendant's failure sufficiently to raise a Sixth Amendment argument did not amount to a waiver of that argument so as to preclude us from applying the "plain error" principle of ORAP 5.45(1).

■ We therefore turn to the question whether, under that rule, we have discretion to review defendant's Sixth Amendment claim. The state's principal contention that we do not derives from a long-established exception to the Confrontation Clause known as the "forfeiture by wrongdoing" rule. That rule, explicitly reaffirmed by the *Crawford* court, 541 US at 62, precludes a defendant from asserting the right to confront a declarant whom the defendant has caused to be absent from trial. The rule derives from *Reynolds v. United States*, 98 US 145, 158, 25 L Ed 244 (1878), where the Court stated:

> "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his [*i.e.*, the accused's] own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege."

The state argues that one inference arising from the record is that "defendant may have been responsible for Stevenson's refusal to testify." That inference, according to the state, flows from the fact that Stevenson abruptly changed his mind about testifying without offering any reason and from some pretrial colloquy in which the prosecutor indicated that he and defense counsel had agreed not to discuss "gang activity or gang-related violence." The existence of the inference, the state posits, means that at least two of the prerequisites to our exercise of discretion to review defendant's Confrontation Clause argument do not exist. First, the question of the hearsay evidence's admissibility is not a purely legal question; it depends on disputed facts, namely, whether or not

defendant was responsible for Stevenson's "absence." Second, to reach defendant's argument, we have to choose between competing inferences: On the one hand, we could infer that Stevenson refused to testify for some reason unrelated to any coercion by defendant, but on the other hand, we could infer that Stevenson's refusal resulted from defendant's wrongful conduct.

The problem with this theory is that, like the state's waiver argument, it would obliterate the plain error rule in ORAP 5.45(1). If our discretion to review plain error were to disappear whenever a respondent could hypothesize some set of facts that, had the record been developed differently, would create a factual dispute or a competing inference, we would never have occasion to exercise that discretion. To create the kind of factual dispute or competing inference that would defeat plain error review, a respondent must point to facts in the existing record or to inferences that are considerably less speculative than the one in the present case. As we have noted in a different context, an inference must reasonably flow from predicate facts. *State v. Beason,* 170 Or App 414, 423-24, 12 P3d 560 (2000), *rev den,* 331 Or 692 (2001). The predicate facts in the present case (Stevenson reneged on his offer to testify against defendant; Stevenson and defendant knew each other; the parties agreed not to mention gangs) are inadequate to support the inference the state would have us recognize (defendant coerced Stevenson). If defendant were on trial for interfering with a witness, for example, no conviction based solely on the evidence in this record could survive. We therefore reject the state's contention that, in order to decide whether defendant's Sixth Amendment rights were violated, we would have to resolve fact issues or choose from competing inferences.

■      As we noted above, we can exercise our discretion to review an unpreserved claim of error only if (1) the error is purely legal, (2) it is obvious and not reasonably in dispute, and (3) its obvious erroneousness is something we can decide without going beyond the record, without choosing between competing inferences, and without relying on any facts except those that are irrefutable. *State v. Brown,* 310 Or at 355; *State v. Gornick,* 196 Or App 397, 404, 102 P3d 734 (2004).

■ First, the question of whether McGetrick's testimony was admissible is purely legal; the record contains no factual disputes that would affect the interpretation of the Sixth Amendment. Second, the legal issue has an obvious and indisputable resolution. In determining whether an asserted legal error is plain, we rely on "the law existing at the time the appeal is decided, and not as of the time of trial." *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). Thus, we are governed by *Crawford*, which forbids the admission of testimonial hearsay of an unavailable declarant when the defendant lacked an opportunity to cross-examine the declarant concerning the hearsay statement. *Crawford*'s pronouncements are not in dispute, and its applicability to the present case is clear. McGetrick's proffer indicated that his testimony would consist of Stevenson's confession and implication of defendant as the instigator of the robbery, and statements made to police for use in later proceedings against Stevenson and defendant. Under *Crawford*, Stevenson's hearsay statements are "testimonial." 541 US at 68 ("Whatever else the term ['testimonial evidence'] covers, it applies at a minimum * * * to police interrogations."). *Compare State v. Thackaberry*, 194 Or App 511, 515-16, 95 P3d 1142 (2004) (plain error doctrine did not apply to defendant's failure to object to admission of urinalysis report without opportunity to cross-examine author; there was "reasonable dispute" whether laboratory report was testimonial in nature under *Crawford*). In addition, the trial court concluded without objection that Stevenson was unavailable. Defendant had no opportunity to examine Stevenson concerning his hearsay statement before or during trial. In sum, the trial court admitted testimonial hearsay from an unavailable witness whom defendant had no opportunity to cross-examine; in doing so, it erred. Third, all of those facts appear on the face of the record.

Because the error is apparent on the face of the record under the Supreme Court's criteria, we must exercise our discretion whether to consider it. *Ailes*, 312 Or at 382. In doing so, we take guidance from the following nonexclusive list of factors:

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6.

We elect to consider the error for the following reasons. First, the gravity of the error is significant. Other than Stevenson's hearsay statements, the evidence against defendant was scant. Without those statements, the prosecution's case would have rested on the fact that defendant's car was parked in front of Stevenson's mother's house (alternatively described in the record as Stevenson's house) the night of the burglary; the disputed testimony of defendant's father concerning whether defendant was nervous on the night of the burglary; and the testimony of one of the victim's housemates, absent during the burglary, who opined that Stevenson might have acted in concert with defendant. Neither victim had the opportunity to observe the perpetrator who was not Stevenson and, as a result, neither could identify defendant by photograph or in person. Moreover, the jury queried the judge about how much weight McGetrick's testimony should receive because Stevenson himself did not testify. The judge replied, "The fact that [the testimony] came to you through the detective does not change the nature of the testimony or how you should evaluate it." That exchange confirms that the testimony (despite its hearsay nature) was a critical factor in the jury's decision to convict. If the court had excluded the hearsay, the chance of a conviction would have been significantly reduced.

More generally, the ends of justice favor our exercise of review. Central to the *Crawford* court's rejection of *Roberts* was concern over the inconsistent results that the *Roberts* "trustworthiness" standard had produced: The Court recognized that reasonable minds can arrive at opposite conclusions about reliability based on the same set of facts, a point illustrated in the Washington courts' attempts to resolve *Crawford* under the *Roberts* test. *Crawford*, 541 US at 40-42,

66-67. According to the Court, the procedural requirement of cross-examination provides an important truth-testing tool to safeguard defendants from "amorphous" inquiries into reliability. *Id.*, 541 US at 54. In this case, although defendant did not make a federal constitutional argument based on trustworthiness, the record reveals (at minimum) a dispute about the reliability of Stevenson's statements under the rules of evidence. To the extent that the reliability inquiry under OEC 804(3)(c) and cases interpreting it might lead to inconsistent results (as *Roberts* did), justice is served by applying the rule announced in *Crawford* to this case.

In light of the force with which the foregoing factors weigh in favor of reviewing the error, we are not dissuaded by the fact that the trial court was not "presented with both sides of the issue and given an opportunity to correct error." *Ailes*, 312 Or at 382 n 6. It is true that, as the state argues, if defendant had explicitly raised a Sixth Amendment argument and framed it in terms that the Supreme Court ultimately applied in *Crawford*, the record might have developed differently. Nothing prohibits that development from occurring on remand. On the other hand, our refusal to entertain defendant's *Crawford* argument would work an injustice that could be rectified, if at all, only by way of post-conviction relief. *Compare Thackaberry*, 194 Or App at 517 (declining to review unpreserved *Crawford* error because "likelihood is great" that record would have developed differently).

■ In sum, *Crawford* prohibits the admission of testimonial hearsay by an unavailable witness against a criminal defendant unless the defendant has had the opportunity to cross-examine the hearsay declarant. *Crawford*, 541 US at 68. Police interrogations produce testimonial statements. *Id.* In this case, McGetrick's custodial interview of Stevenson was a police interrogation, and Stevenson's statements are therefore testimonial. Stevenson's unequivocal refusal to testify rendered him unavailable. Defendant lacked an opportunity to examine Stevenson concerning the accusatory statements, either before or during the trial. Thus, the trial court erred in its decision to admit McGetrick's testimony about Stevenson's hearsay statements. The error was not harmless.

Reconsideration allowed; former disposition withdrawn; reversed and remanded.