Argued and submitted July 20, sentences vacated; remanded for resentencing; otherwise affirmed November 16, 2005, petition for review denied March 7, 2006

(340 Or 201)

STATE OF OREGON,
*Respondent,*

*v.*

NATHAN WAYNE GALLOWAY,
*Appellant.*

02FE0202; A121922

123 P3d 352

George W. Kelly argued the cause for appellant.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of 27 counts involving a variety of crimes stemming from his alleged participation in two fire-setting incidents.[1] He assigns error to three of the trial court's rulings: one allowing into evidence the taped interviews of an accomplice who was unavailable to testify, one denying defendant's motion for a mistrial, and one sentencing defendant to an "upward departure" sentence based on findings of fact not made by a jury or admitted by him. For the reasons that follow, we affirm defendant's convictions and remand for resentencing.

Because our disposition of the first assignment of error requires us to evaluate the quantity and quality of the evidence against defendant, we recite the undisputed facts in some detail. We begin with some background facts regarding the preexisting relationship between defendant and one of the victims in this case, Brown.

On May 3, 2002, defendant was charged with two counts of third-degree theft. The information stating those charges was signed by Brown, Crook County's Chief Deputy District Attorney. Defendant pleaded guilty to those charges and was sentenced to jail time and community service work. On May 25, 2002, defendant was arrested again on several new charges, including fourth-degree assault and resisting arrest. Brown also signed and filed an information in that case. While in custody at the Crook County Jail on his second arrest, defendant made a series of "loud and boisterous statements, accusations, [and] threats" that were heard by the jail's deputies. Those statements included, "I'm going to kill those fucking cops," "[F]uck you and the government," and "Crook County Circuit Court, you make no fucking sense." On August 8, after a court appearance relating to the May 25 incident, defendant told his friends that the district attorney was prosecuting him for something that he did not do and

---

[1] Specifically, defendant was convicted of attempted aggravated murder, ORS 161.405 and ORS 163.095 (9 counts); attempted murder, ORS 161.405 and ORS 163.115 (5 counts); first-degree arson, ORS 164.325 (6 counts); first-degree burglary, ORS 164.225 (2 counts); recklessly endangering another person, ORS 163.195 (4 counts); and arson in the second degree, ORS 164.315 (1 count).

that he was "going to fix it." Finally, early in the morning of August 14, defendant repeated that statement and suggested that he was going to "blow[ ] up a DA's house."

The fire on which all but one of the counts against defendant are based occurred in the basement of the Brown family home at approximately 3:30 a.m. on August 14, some two hours after the last statement described above. At that time, as described above, defendant knew who Brown was and had demonstrated animus toward him and his office.

At 3:30 that morning, Prineville police and firefighters responded to a 9-1-1 call by Brown reporting the fire. An investigation revealed that the cause was arson. After leaving the scene of the fire, a Prineville police officer observed defendant "hunched over [and] sneaking across the street, looking towards where the Brown residence was at." Defendant told the officer that he was staying with friends in a nearby apartment complex.

The following night, the fire on which the remaining count against plaintiff is based occurred at Ochoco Creek Park, a few blocks from Brown's home. At the scene of that fire, investigators found cups from soft drinks, a Sudafed package, and the top of a chewing gum package, all apparently from purchases at a nearby convenience store. Defendant had been seen with friends at that store before the fire started, purchasing four sodas and a pack of Wrigley's chewing gum. They had also been seen in the medicine aisle. Later that night, one of defendant's friends called the convenience store and told the store clerk that he wanted the store's surveillance tape. The store clerk could hear defendant in the background yelling that she would get her "ass kicked" if she did not give them the tape.

Defendant was subsequently arrested on the charges stemming from his role in the Brown and Ochoco Creek Park fires. A deputy testified at trial that, while defendant was in the Crook County Jail, defendant was overheard telling another inmate that the state was " 'trying to pin the fire down at the DA's house on me.' " The other inmate asked defendant if he had an alibi, to which defendant replied, " 'I told my girlfriend what to say to the cops.' "

During trial, the state sought to introduce into evidence two tape-recorded interviews conducted by police with defendant's accomplice, Daniel Buker. In those interviews, Buker told authorities that defendant had started the fires at the Brown residence and the park. Defense counsel objected on statutory, but not constitutional, grounds. The court ruled that the tapes were admissible as statements against interest. The jury subsequently found defendant guilty on all counts.

On appeal, defendant first assigns error to the admission of Buker's interview statements. Defendant argues that the statements were testimonial hearsay by a declarant whom defendant did not have the opportunity to cross-examine and that therefore they were inadmissible under the Confrontation Clause of the Sixth Amendment to the United States Constitution as construed in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). That decision, which worked a significant change on preexisting law, was decided after defendant's trial; therefore, obviously, defendant did not cite it or make the Sixth Amendment argument that it validates. Nonetheless, the holding of that case applies to this appeal, *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), and defendant argues that we should reach the unpreserved issue because it deals with an error that is plain on the face of the record. ORAP 5.45(1).

The state concedes that Buker's taped conversation was testimonial hearsay, that defendant had no opportunity to cross-examine him, and that he was unavailable—in other words, that, had *Crawford* been decided and had defendant made a proper objection to the evidence, the court would have erred in denying it. The state argues, however, that, because the claim of error is unpreserved, we cannot consider it unless certain prerequisites are met and, in any event, even if we *can* consider it, we should not. As explained below, we have the discretion to review the claim of error because it is apparent on the face of the record, but we choose not to exercise that discretion in this instance.

This court has discretion to consider an error of law that is "apparent on the face of the record," even if no claim of

error was raised at trial. ORAP 5.45(1); *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Three requirements must be satisfied in order for an error to be deemed "apparent on the face of the record": The error must be one of law, it must be "obvious, not reasonably in dispute," and the facts on which it depends must be irrefutable so that we need not "go outside the record or choose between competing inferences." *Brown*, 310 Or at 355.

The claimed error in question here meets those criteria. First, it involves a legal question only. The parties do not disagree with the facts as they are presented in the record; the only dispute concerns whether the admitted statements amount to a violation of defendant's confrontation rights as set forth in the Sixth Amendment. Second, the error is clear; because we rely on interpretations of the law existing at the time of appeal, not the time of trial, *Jury*, 185 Or App at 136, we are bound by *Crawford*'s holding, and, as the state does not contest, *Crawford* bars the admission of testimonial hearsay from an unavailable declarant (with some exceptions not implicated here) if the defendant had no opportunity for cross-examination. Third, the predicate facts—the circumstances of the statement establishing that it was testimonial, declarant's unavailability, the lack of opportunity to cross examine—are irrefutable and do not require us to look outside the record or draw competing inferences.

The admission of Buker's interview tapes, therefore, constitutes an error of law apparent on the face of the record and we must decide whether to consider it. In determining whether or not to exercise our discretion to review the error, we take guidance from the Supreme Court's list of significant factors in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). Those are

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6 (citations omitted). Review of plain error remains the exception, not the rule. *Jury,* 185 Or App at 138.

Defendant maintains that our decision in *State v. Page,* 197 Or App 72, 83, 104 P3d 616 (2005), compels us to consider the error because in that case we decided to exercise our discretion and review an unpreserved *Crawford* claim. The state counters that *State v. Cox,* 337 Or 477, 500, 98 P3d 1103 (2004), compels us *not* to consider the error, because in that case, the Supreme Court held that we must never do so where, "if defendant had raised a timely objection, the state could have found other ways to prove the facts that defendant now challenges, or it could have chosen to forego the testimony and avoid the issue." Neither of these arguments is correct, because neither case purported to establish a *per se* rule. In *Page,* we noted that "the evidence against defendant was scant," 197 Or App at 83, and that fact obviously factored into our decision. In *Cox,* the Supreme Court emphasized that the holding applied "[i]n these circumstances," which provided "an appropriate occasion." *Cox,* 337 Or at 500. Both this court and the Supreme Court, in other words, have recognized that the decision to exercise or not to exercise our discretion to review plain error in any case depends on the facts of that case.

■ The controlling factor in the present case is that the "gravity of error" in admitting Buker's statements was not significant. Unlike *Page,* this case presents ample evidence of defendant's guilt over and above the evidence in the disputed *Crawford* hearsay. For example, the state presented evidence showing that defendant had been prosecuted by Brown in the past and that he had told his friends that he wanted to blow up a DA's house; that defendant was observed by a police officer near the Brown residence on the night of the fire, watching the fire and appearing "nervous" and "startled"; that defendant and his friends were seen at the convenience store near Ochoco Creek Park; and that they purchased several items there that were later recovered from the park after the fire. Furthermore, Lane, an inmate housed with defendant at the Crook County Jail, testified that defendant had admitted his involvement in the fires and another inmate, Naef, testified that defendant referred to Brown as

"Smoky." Buker's statements were therefore largely cumulative and not likely to have had an impact on the jury's verdict. Further, as the nonhearsay evidence against defendant becomes more and more significant, the likelihood that the state would have responded to a proper *Crawford* objection by choosing to forego the hearsay increases as well. That consideration also militates against exercising our discretion to review the unpreserved claim of error in this case. In sum, we opt not to exercise our discretion to reach the unpreserved claim of error.

■ We turn next to defendant's second assignment of error, in which he asserts that the trial court abused its discretion in denying his motion for a mistrial after the prosecutor told the jury in closing argument, "In this trial you folks haven't heard a single thing about alibi." According to defendant, that statement amounted to an impermissible comment on defendant's decision to remain silent and not testify. He relies on *State v. Wederski*, 230 Or 57, 60, 368 P2d 393 (1962), a forgery case in which the prosecutor argued to the jury that "there was no denial by Mr. Wederski that that was his handwriting." The Supreme Court determined the effects of such a statement to be "presumably harmful" and ordered a new trial. *Id.*

■ We find *Wederski* to be inapplicable here. In that case, the prosecutor referred specifically to the defendant's failure to deny the handwriting as his own. The prosecutor's argument to the jurors in the present case that they had heard no testimony regarding alibi was not a comment on defendant's decision to remain silent, but rather to alert the jury that the defense had not put on *any* evidence regarding an alibi. "There is no rule which prevents the state from commenting on defendant's failure to call witnesses other than the defendant which were available to him." *State v. Lincoln*, 250 Or 426, 427, 443 P2d 178 (1968). Moreover, the court instructed the jury in this case not to place any weight on defendant's decision not to testify. The trial court did not err in denying defendant's motion for a mistrial.

■ Defendant's third assignment of error concerns an upward departure sentence imposed by the trial court on the

basis of findings not made by a jury or admitted by defendant. Specifically, the trial court concluded that the presumptive sentence for arson in the second degree, 30 days in jail, was insufficient in this case given the risk to other human beings from setting a fire "in the middle of August in one of the driest years in the history of recorded weather." Instead, the trial court sentenced defendant to six months on the second-degree arson conviction, to run consecutively to the other time imposed. Defendant argues that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), as applied in *State v. Gornick*, 196 Or App 397, 102 P3d 734 (2004), *rev allowed*, 338 Or 583 (2005), the trial court's use of that finding to impose an upward departure sentence was improper and that this case should be remanded for resentencing despite the fact that the claim of error was not preserved below. The state acknowledges that *Gornick* is controlling but urges us to disavow it. We decline to do so.

Sentences vacated; remanded for resentencing; otherwise affirmed.