Argued and submitted April 18, 2005, affirmed May 31, petition for review denied
August 15, 2006 (341 Or 245)

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD LEE POITRA,
*Appellant.*

## C010926CR; A115576

136 P3d 87

Jason E. Thompson argued the cause for appellant, and, with Ferder Casebeer & French LLP, filed the second supplemental brief. Andrew S. Chilton and Chilton & Ebbett, LLC filed the opening brief. Richard Lee Poitra filed the *pro se* supplemental brief. Patrick M. Ebbett and Chilton, Ebbett & Rohr, LLC filed the supplemental brief.

Erika Hadlock, Assistant Attorney General, argued the cause for respondent. On the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General.

Before Haselton, Presiding Judge, and Ortega, Judge, and Deits, Judge pro tempore.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals his convictions for robbery and theft, raising seven assignments of error. We address two, rejecting the others without discussion:[1] (1) whether the trial court erred in denying defendant's motion to suppress certain evidence found in defendant's house because it was outside the scope of the warrant; and (2) whether the trial court's admission of the tape-recorded confession of an accomplice violated defendant's constitutionally protected confrontation rights under *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). We affirm.

Because our disposition of both assignments of error requires us to evaluate the quantity and quality of the evidence against defendant, we recite the facts in some detail, viewing them in the light most favorable to the state. *State v. Cunningham*, 179 Or App 359, 361, 40 P3d 1065, *adh'd to on recons*, 184 Or App 292 (2002), *rev'd and rem'd on other grounds*, 337 Or 528 (2004).

Three men robbed a convenience store on the evening of December 14, 2000. The robbery was recorded on the store's video surveillance system. One of the robbers wore a Santa Claus hat-and-beard combination, another wore a hooded sweatshirt, and the third wore a ski mask.

Police received their first lead in the case from the store owner, who was present during the robbery. The owner, who was familiar with defendant and defendant's girlfriend, Chapman, told police that he suspected they were involved. He said that, shortly before the robbery, Chapman came into the store twice asking for a ride,[2] and that a friend had told him that defendant was seen wearing a "Santa Claus mask"

---

[1] One of the assignments of error that we do not discuss is defendant's unpreserved challenge to the trial court's imposition of consecutive sentences based on findings not made by a jury, which defendant asserts was unconstitutional under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). We have previously concluded that such action does not constitute plain error that we will review for the first time on appeal. *See State v. Fuerte-Coria*, 196 Or App 170, 174, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005).

[2] Another witness who also talked to Chapman at the store indicated that she had seemed "nervous."

on the night of the robbery. He also reported that the perpetrator who was wearing the Santa Claus hat and beard had altered his voice during the robbery, leading the store owner to suspect that he was trying to avoid being recognized.

On further investigation, police determined that about two-and-a-half hours before the robbery, defendant had picked up Chapman from a house located near the store. A resident of the house told police that defendant had entered wearing a "Santa Claus ensemble," a hat-and-beard combination.[3] After police showed the resident surveillance photos and video of the robbery, she told them that the person dressed as Santa in the photos and video appeared as defendant did when he visited her house. At trial, she testified that she was "[r]eal sure" that they were the same person.

Police then interviewed defendant. At first, defendant reported that he had spent the entire day in question at his mother's house (where he was then living), except for leaving to attend a meeting at a rehabilitation center at 9:00 p.m. and returning home afterwards. When confronted with the fact that witnesses had seen him pick up Chapman earlier that evening, defendant modified his story accordingly, but still claimed to have attended the 9:00 p.m. meeting. Police later contacted defendant's rehabilitation counselor, who told them that there was no record of defendant attending any meetings at the center on the night in question (or indeed for more than a week before that night) and that no meetings had taken place at the center after about 8:30 p.m. that evening.

Also during the interview, defendant denied having a "Santa Claus mask," even when confronted with evidence that a witness had described him as wearing one when he picked up Chapman. Defendant explained that he did own a "Santa Claus hat," and admitted that he wore the hat into the residence when he picked up Chapman.[4] Defendant informed police that his Santa hat should be at his house.

---

[3] Chapman also told police that defendant entered the house "dress[ed] to look like Santa."

[4] In a later interview, defendant's mother also told police that defendant owned a Santa hat.

Police obtained a search warrant authorizing them to search defendant's home and to seize, among other things, a "Santa Claus[ ] mask." In an attic that could be accessed through defendant's bedroom, police found several garbage bags. One contained a Santa Claus hat, along with photo identification of defendant. Another contained a ski mask matching that worn by one of the suspects in the surveillance video, and a heavy jacket, black pants, brown boots, and socks that also matched clothing reportedly worn by the suspects. Some time after executing the search warrant, police returned to defendant's home and seized "white, fuzzy material" that looked like the beard worn by the perpetrator who had been disguised as Santa Claus.

Defendant's roommate, Gleason, was arrested and confessed that he and two other people had robbed the store and that he "believed" there was a fourth person in the car. However, he refused to name his accomplices. Gleason said the robbery had been discussed at the house he shared with defendant. He also indicated that he was not with defendant when he went to pick up Chapman on the evening of the robbery. Gleason, through his attorney, invoked his Fifth Amendment right not to testify at defendant's trial; instead, his taped confession was played for the jury.

Before trial, defendant moved to suppress several items of evidence. One was the Santa Claus hat; he contended that the hat "is not specifically authorized to be seized under the terms of [the] search warrant," which authorized seizure of a "Santa Claus[ ] mask." The trial court denied the motion, concluding that "a Santa Claus mask and a Santa Claus hat are reasonably consistent." A jury convicted defendant of several counts of robbery and theft, and defendant filed this appeal.

■ We begin with defendant's challenge to admission of the Santa Claus hat, which is one of several assignments of error asserted *pro se*. We understand defendant to be contending, as he did in the trial court, that the hat should have been suppressed because seizure of the *hat* was outside the scope of the warrant authorizing seizure of a *mask*.[5] Defendant's argument does not make clear whether it is based on

---

[5] Defendant's *pro se* brief contains a suggestion that the warrant did not describe the items to be seized with sufficient particularity in accordance with

Article I, section 9, of the Oregon Constitution or the Fourth Amendment to the United States Constitution. In any event, however, we need not decide whether the trial court erred in admitting the disputed evidence because the error, if any, was harmless under both the state and federal constitutions.

Under Article VII (Amended), section 3, of the Oregon Constitution, an error is harmless if there is little likelihood that it affected the verdict. *State v. Gibson*, 338 Or 560, 576, 113 P3d 423 (2005). The correct focus of the inquiry is on the possible influence of the error on the verdict rendered. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). If the disputed testimony is merely cumulative of other evidence that already established the same fact, then the error is harmless. *Id.* at 34. Under the federal constitution, error is harmless if "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986). Whether an evidentiary error is harmless in a particular case depends on a number of factors including the importance of the evidence, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting the evidence, and the overall strength of the prosecution's case. *Id.* at 684. We address the state constitutional question first. *State v. Bates*, 203 Or App 245, 251, 125 P3d 42 (2005).

The goal of the state, of course, was to connect defendant to the crime and implicate him as the perpetrator disguised as Santa. The state sought to accomplish that by, among other things, proving that defendant owned a Santa hat and had been seen wearing it on the evening of the robbery and that defendant's Santa hat matched the one worn by one of the perpetrators. The hat found at defendant's home was admitted to bolster the establishment of those facts.

However, the hat was not the only evidence implicating defendant as the perpetrator disguised as Santa. First, defendant admitted, and his mother confirmed, that he

---

ORS 133.565(2)(c), a different argument than the one he raised below. We agree with the state that such an argument is not preserved, but understand the gist of defendant's assignment of error to address the argument he did preserve, relating to the scope of the warrant.

owned a Santa hat. Second, defendant admitted that he was wearing the hat on the evening of the robbery when he went to pick up Chapman. That was confirmed by both Chapman and the resident of the house through their statements that defendant entered the house that night "look[ing] like Santa" in some sort of "Santa Claus ensemble." Third, the resident's testimony established the similarity between defendant's hat and the hat worn by the perpetrator; she stated that there was no difference between the way defendant appeared when he entered her house and the appearance of the perpetrator on the surveillance video. Lastly, it is worth noting that the fact that the hat was found at defendant's house when the warrant was executed adds very little, because defendant told police they would find it there.

All told, there was ample other evidence establishing that defendant owned a Santa hat, that he wore it on the night of the robbery, and that his hat resembled that of the perpetrator. The actual admission of the hat was cumulative to that evidence. In sum, there is little likelihood that the admission of the hat had any effect on the verdict, and the error, if any, was therefore harmless under the Oregon Constitution. Additionally, as developed further below, the error is harmless in light of the strength of the state's case. For all those reasons, any error was also harmless beyond a reasonable doubt under the federal constitution.

■ Defendant also assigns error to the trial court's admission of the taped confession of his accomplice, Gleason. The trial court admitted the tape as a statement against interest under the unavailable declarant hearsay exception, OEC 804(3)(c), because Gleason had asserted his Fifth Amendment privilege against self-incrimination and refused to testify. Defendant contends for the first time on appeal that admission of the tape violated his confrontation rights under the Sixth Amendment to the United States Constitution as interpreted in *Crawford*. In that case, the Supreme Court held that the Confrontation Clause precludes admission of testimonial hearsay by an unavailable declarant whom the defendant did not have the opportunity to cross-examine. 541 US at 68. Because defendant concedes that the error was unpreserved, we must determine whether the error

was apparent on the face of the record and, if so, whether to exercise our discretion to review it.

■    This court has discretion to consider an error of law that is "apparent on the face of the record," even if that error was not raised at trial. ORAP 5.45(1). In order to be deemed "apparent on the face of the record," the error (1) must be purely legal, (2) must be obvious and not reasonably in dispute, and (3) must depend only on irrefutable predicate facts, so that we need not go beyond the record or choose between competing inferences. *State v. Page*, 197 Or App 72, 78, 104 P3d 616 (2005). As we held under similar circumstances in *State v. Galloway*, 202 Or App 613, 123 P3d 352 (2005), *rev den*, 340 Or 201 (2006), the error here is apparent on the face of the record.

As here, the defendant in *Galloway* challenged the admission of taped interviews between police and the defendant's unavailable accomplice. *Id*. at 615. The trial court admitted the tapes as statements against interest. *Id*. at 617. We concluded that the unpreserved error was apparent on the face of the record:

> "First, it involves a legal question only. * * * [T]he only dispute concerns whether the admitted statements amount to a violation of defendant's confrontation rights * * *. Second, the error is clear; because we rely on interpretations of the law existing at the time of appeal, not the time of trial, * * * we are bound by *Crawford*'s holding, and, * * * *Crawford* bars the admission of testimonial hearsay from an unavailable declarant (with some exceptions not implicated here) if the defendant had no opportunity for cross-examination. Third, the predicate facts—the circumstances of the statement establishing that it was testimonial, declarant's unavailability, the lack of opportunity to cross-examine—are irrefutable and do not require us to look outside the record or draw competing inferences."

*Id*. at 618 (citation omitted). For those same reasons, the admission of Gleason's taped confession constitutes an error apparent on the face of the record in violation of *Crawford*.

■■    Next, we must decide whether to exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823

P2d 956 (1991), to correct the error. That determination requires us to consider

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6.

The decision to exercise discretion to review plain error depends largely on the facts of the case. *Galloway*, 202 Or App at 619. In *Page* and *Galloway*, the particular facts of each case led us to opposite conclusions as to whether to exercise discretion. In *Page*, our decision to exercise discretion to review the error was based on our assessment that, because the other evidence inculpating the defendant was "scant," the gravity of the error in admitting the disputed evidence was significant. 197 Or App at 83 (noting that, "[i]f the court had excluded the hearsay, the chance of a conviction would have been significantly reduced"). On the other hand, our decision not to exercise discretion to review the error in *Galloway* followed from our assessment that there was ample other evidence inculpating the defendant, so that the gravity of the error in admitting the disputed evidence was not significant. 202 Or App at 619 (noting that "[t]his case presents ample evidence of [the] defendant's guilt over and above the evidence in the disputed *Crawford* hearsay").[6]

This case is more like *Galloway* than *Page*. The state's evidence, without the taped confession of defendant's accomplice, could easily establish for a jury that defendant was the perpetrator dressed as Santa Claus. As described

---

[6] We also noted in *Galloway* that, as the other evidence against the defendant becomes more significant, it becomes more likely that the state would have chosen to forego the evidence if an objection had been made; we are accordingly less inclined to review unpreserved error in such instances. 202 Or App at 619-20; *see also State v. Cox*, 337 Or 477, 500, 98 P3d 1105 (2004) (declining to exercise discretion to review unpreserved error because, "if defendant had raised a timely objection, the state could have found other ways to prove the facts * * * or it could have chosen to forego the testimony and avoid the issue").

above, the evidence established that defendant owned a Santa hat, that he wore it on the evening of the robbery into a house near the store, and that his hat resembled that worn by one of the perpetrators. A resident at the house that defendant visited testified that she was "[r]eal sure" that defendant was the man dressed as Santa in the surveillance video. The store's owner, who was familiar with defendant and Chapman, suspected that defendant was the perpetrator dressed as Santa because the perpetrator disguised his voice during the robbery and because of Chapman's two visits to the store right before the robbery. The store owner's friend testified that Chapman acted nervous during those visits. A number of items matching those worn by the perpetrators were found at defendant's home in an attic that could be accessed through defendant's bedroom. Finally, defendant gave inconsistent and false accounts of his activities on the evening of the robbery.

The accomplice's taped confession adds little to the already strong evidence implicating defendant. Gleason did not implicate defendant by name; he confessed only that he committed the robbery with two unnamed accomplices and that he believed that an additional person was waiting in the car. Much of the tape consists of Gleason attempting to de-emphasize his own involvement in the robbery. The only evidence in the taped confession that incriminated defendant was Gleason's statements that a group planned the robbery at the house shared by Gleason and defendant and that Gleason knew of defendant's activities on the night of the robbery (*i.e.*, his comment that he did not go with defendant to pick up Chapman that evening).

The gravity of the error in admitting the tape, viewed in light of the other evidence of defendant's guilt, is insignificant. As in *Galloway*, the exclusion of the tape would not have significantly reduced the chance of defendant's conviction and, indeed, had defendant challenged its admission on constitutional grounds, the state might well have elected to forego use of the tape. Therefore, we decline to exercise our discretion to correct the error.

Affirmed.