Submitted on record and briefs March 15, affirmed June 28, petition for review denied September 19, 2006 (341 Or 392)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOSEPH DANIEL DERSCHON,
*Appellant.*

## 20-02-23657B; A120993

138 P3d 30

Patrick M. Ebbett and Chilton, Ebbett, & Rohr LLC filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted on various charges[1] arising from an incident in which he and another man forcibly entered a home with a firearm, bound two occupants with duct tape, and stole their cash, identification, and other personal belongings. On appeal, defendant asserts that his right to confront one of the witnesses against him was violated when the trial court admitted testimonial hearsay evidence from an unavailable declarant whom defendant did not have the opportunity to cross-examine. *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Defendant acknowledges that he did not object to the admission of the evidence at trial, but he maintains that admitting it was plain error and we should exercise our discretion to review it. The state responds that the record discloses no error at all, much less a plain error, and that, if we conclude that it does, we should choose not to review it. We conclude that, under our existing cases applying *Crawford*, admitting the testimony was plain error, but (again taking guidance from those cases) we choose not to exercise our discretion to review that error. We also note that the Supreme Court's reasoning in *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006), suggests that admitting the testimony might not have been error at all, but we conclude that, even if that were the case, the result here would not differ from the one we reach using the pre-*Gornick* analysis. Accordingly, we affirm the judgment of the trial court.

Because the jury found defendant guilty, we recount the facts in the light most favorable to the state. *State v. Brown*, 310 Or 347, 350, 800 P2d 259 (1990). In early November 2002, defendant learned from a friend that one of the victims, K, made her living by selling used jewelry and electronics from her home. At approximately 11:00 a.m. on November 13, 2002, K's doorbell rang. When she answered,

---

[1] Specifically, those charges included robbery in the first degree, ORS 164.415 (two counts); robbery in the second degree, ORS 164.405 (two counts); burglary in the first degree with a firearm, ORS 164.225 and ORS 161.610; kidnapping in the second degree, ORS 163.225 (two counts); and theft in the first degree, ORS 164.055 (three counts).

she saw two men, both of whom were unknown to her, standing just outside. Neither man wore a mask, and one of them, later identified as defendant, had a bushy mustache. The other, later identified as Davis, forcibly pushed K back into her house, and both men entered. Holding a gun to K's head, Davis demanded that she tell him where she kept her money, jewelry, guns, and drugs. The other victim, S, who was upstairs in K's residence at the time, heard K's screams and retrieved a handgun. She came downstairs and pointed the gun at Davis; after a struggle, she relinquished the gun. Defendant then bound both victims with duct tape and instructed them to stay in the kitchen, where he kept watch over them while Davis began searching the residence. Defendant then ordered the victims into the bathroom; he closed the door and wedged something against it to prevent them from leaving. Eventually, after K and S no longer heard noises in the residence, they were able to free themselves and leave the bathroom. The victims discovered that jewelry, electronics, cash, and personal identification were missing from the residence.

Immediately after the robbery, K called 9-1-1, and the responding officers took statements from both victims. An officer also talked with K's neighbor, who had observed two men in the neighborhood and thought, based on their dark clothing and hats, that "they looked odd" and "out of place." The neighbor had observed the two men take "a bunch of stuff" from K's residence, put it in a black four-door import sedan, and speed away. He told the officer that one of the men had a mustache.

At the time of the home invasion, Davis was living in a fifth-wheel trailer that he parked on property owned by his friend, N. Davis did not own a vehicle and occasionally borrowed N's black four-door Nissan Stanza. On the day of the incident, at approximately 10:30 a.m., N saw that her car was not in the driveway and tried twice to contact Davis on his cell phone, but he did not answer. N noticed an older-model Corvette on her property at that time, which she had seen several times in the preceding two days; at trial, several witnesses confirmed that defendant drives a Corvette of the same description.

At approximately 12:10 p.m. that afternoon, N saw that her Nissan had been returned. She went to talk with Davis about his apparently unauthorized "borrowing" of her car. Davis and defendant were in the trailer together and were sorting through what N described as "handfuls" of jewelry. N noticed that defendant had a long mustache at that time.

The same day as the incident, police received tips from two sources indicating that Davis had been involved in the home invasion. Also, they interviewed K, and she picked Davis out of a photograph array as one of the robbers. Consequently, they arrested Davis. At the time, he was carrying some of the victims' identification and credit cards. While Davis was in custody, he was interviewed in the presence of two officers and confessed to the crime. Although reluctant at first to identify his accomplice, he eventually gave defendant's name to police. The following day, police prepared two photo arrays, one of which contained defendant's photograph, and presented them to K. She identified defendant as the second suspect in the robbery. Police then went to defendant's sister's house, where they knew he frequently stayed, and found his Corvette in the driveway. Defendant did not respond to requests to leave the house for approximately 30 minutes. When he finally did, he had no mustache, but his face and neck were red; according to police testimony, he looked as though he had just shaved.

Defendant and Davis were both indicted on multiple counts of first-degree robbery, second-degree burglary, kidnapping, first-degree burglary, and first-degree theft. Before trial, Davis pleaded guilty to the charges. Then, instead of testifying at defendant's trial, he elected to invoke his right to remain silent. As a result, the court deemed Davis to be unavailable. The state subsequently introduced Davis's statements identifying defendant as his accomplice through the testimony of two officers. Defendant did not object. At the conclusion of the trial, the jury found defendant guilty of all charges and the trial court sentenced him to 320 months in prison.

On appeal, defendant argues that the admission of the officers' testimony relating Davis's out-of-court statements violated his confrontation right under the Sixth

Amendment to the United States Constitution.[2] Defendant relies on *Crawford*, in which the Supreme Court held that, notwithstanding the rules of evidence, testimonial hearsay is not admissible unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine him or her. 541 US at 68. Although defendant acknowledges that he did not preserve that claim of error (his trial occurred before *Crawford* was decided), he asserts that the error is apparent on the face of the record and, because the error was not harmless, we should exercise our discretion to review it. ORAP 5.45 (stating preservation requirement and exception for "error of law apparent on the face of the record"); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (explaining plain error rule); *State v. Page*, 197 Or App 72, 78-79, 104 P3d 616 (2005), *rev den*, 340 Or 673 (2006) (applying plain error rule to unpreserved claim of error based on *Crawford*); *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (appellate court applies law as it exists at time of decision on appeal, not as it existed at time of trial).

ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

To qualify as an error that is apparent on the face of the record, "[t]he error must be one of law, it must be 'obvious, not reasonably in dispute,' and the facts on which it depends must be irrefutable so that we need not 'go outside the record or choose between competing inferences.' " *State v. Galloway*, 202 Or App 613, 618, 123 P3d 352 (2005), *rev den*, 340 Or 201 (2006) (quoting *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990)). If a claim of error meets those requirements, we have discretion to review it. We must still decide whether to exercise that discretion. In doing so, we are to consider a variety

---

[2] The Sixth Amendment to the United States Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

of factors, including "the gravity of the error; the ends of justice in the particular case; * * * and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes*, 312 Or at 382 n 6.

Until recently, determining whether an unpreserved *Crawford* error was apparent on the face of the record was a relatively straightforward process, even when that process involved close questions. The threshold plain error inquiry reduced to this: If *Crawford* had existed at the time of the trial, and if the defendant had made a proper *Crawford* objection, is it beyond dispute, on the appellate record, that the trial court would have erred in admitting the evidence? *See Galloway*, 202 Or App at 618. That inquiry, in turn, required us to determine—again, on the existing record—that the hearsay statement was testimonial, the declarant was unavailable at trial, and the defendant had had no opportunity to cross-examine. *Id.* If the record contained facts compelling those outcomes, the error was deemed to be apparent, and we would then determine whether we should exercise our discretion to review it. That inquiry, in turn, generally focused on the gravity of the error. If the prosecution presented a strong case even without the erroneously admitted evidence, or if that evidence was merely cumulative, we would conclude that the error was not grave and would decide against exercising our discretion to review it. *Id.* at 619. If, on the other hand, the erroneously admitted evidence was a crucial part of the state's case, we would exercise our discretion to review it. *See, e.g., Page*, 197 Or App at 83-84.

■■ Under the foregoing analysis, we conclude that the error is plain, but we choose not to exercise our discretion to review it. The error is plain because it is beyond dispute that Davis's statement inculpating defendant, made in response to police interrogation while in custody, was testimonial, *Crawford*, 541 US at 53 n 4 (statement in response to police interrogation is testimonial); that Davis, who had invoked his right not to incriminate himself, was unavailable, *Lee v. Illinois*, 476 US 530, 550, 106 S Ct 2056, 90 L Ed 2d 514 (1986) (witness who invokes Fifth Amendment right not to

testify is unavailable); and that defendant had had no opportunity to cross-examine him.[3] However, we decline to exercise our discretion because the gravity of error in admitting the erroneous testimonial hearsay was insignificant. As we said in *Galloway*,

> "[u]nlike *Page*, this case presents ample evidence of defendant's guilt over and above the evidence in the disputed *Crawford* hearsay. * * * Further, as the nonhearsay evidence against defendant becomes more and more significant, the likelihood that the state would have responded to a proper *Crawford* objection by choosing to forgo the hearsay increases as well. That consideration also militates against exercising our discretion to review the unpreserved claim of error in this case."

202 Or App at 619-20.

The same is true here. Not only did K positively identify defendant from two photo arrays, but a neighbor also testified to having seen a man matching defendant's description at the scene of the crime. N observed defendant's car in her driveway while the home invasion was occurring, although no one was present in Davis's trailer during that time. Just after Davis returned home, N entered Davis's trailer and saw defendant with Davis; together they were sorting through "handfuls" of jewelry. Several witnesses testified that defendant had a prominent mustache on the day of the crime, and officers who apprehended defendant at his sister's house observed that, upon his delayed departure from the house, he appeared as though he had just shaved. Moreover, a friend of defendant had very recently told him of the trove of items that K had for sale in her home—information that, presumably, defendant then relayed to Davis.

In light of the foregoing, we conclude that here, as in *Galloway*, the state has presented "ample evidence of defendant's guilt over and above the evidence in the disputed *Crawford* hearsay." *Id.* at 619. Had the proper objection been made during trial, the likelihood that the state would have

---

[3] Although there may be situations in which these facts alone do not amount to obvious error—for example, when the defendant caused the witness's unavailability— the state does not contend that this is such a situation.

proceeded without the hearsay evidence is especially pronounced because the jury had a large quantity of evidence on which to base its verdict. *See State v. Cox*, 337 Or 477, 500, 98 P3d 1103 (2004), *cert den*, ___ US ___, 126 S Ct 50, 163 L Ed 2d 81 (2005) ("[I]f defendant had raised a timely objection, the state could have found other ways to prove the facts that defendant now challenges, or it could have chosen to forego the testimony and avoid the issue. In these circumstances, we decline to exercise our discretion to reach the unpreserved issues that defendant asks us to decide.").

Under the analytical framework that we used in *Galloway*, then, we choose not to exercise our discretion to review the error. However, the Supreme Court's recent opinion in *Gornick* gives us pause regarding the correctness of the *Galloway* template. In *Gornick*, the Supreme Court held that the defendant's unpreserved challenge under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), did not constitute plain error because "multiple competing inferences" could be drawn from the defendant's inaction when the trial court, as opposed to the jury, found the aggravating factors that led to an upward departure sentence. *Gornick*, 340 Or at 169. As the court explained,

> "we are left with a single event, the trial court finding the aggravating facts, but multiple competing inferences that can be drawn from that event. One possible inference is that the trial court erred by finding the aggravating facts in violation of the Sixth Amendment. Another possible inference is that defendant chose, for one of many possible reasons, not to have a jury find the aggravating facts. If that were the case, the trial court did not err. A third possible inference is that defendant did not want the trial court to find the facts but chose not to object for strategic purposes. In sum, the record does not clearly show that the trial court erred, only that it may have erred. We would be speculating were we to state otherwise."

*Id.* at 169-70. If the reasoning from *Gornick* applies in the context of unpreserved claims of *Crawford* error, then, in order to conclude that such an error is apparent, we must determine not only that the disputed testimony relates obviously testimonial hearsay from an obviously unavailable declarant who was obviously never cross-examined; we must

also determine that the defendant's silence when the hearsay was admitted was not intentional. If it was intentional, or if we cannot tell whether it was or was not, then, under *Gornick*, the trial court did not plainly err in admitting the evidence and we have no option but to affirm.

In the present case, however, we need not decide whether defendant's failure to object was intentional, unintentional, or ambiguous. That is so because, in any event, we would affirm. If we were to decide that defendant's silence was obviously not intentional, then we would conclude that the court committed plain error, but, for the reasons explained above, we would not exercise our discretion to review that error. As a result, we would affirm the trial court. If we were to decide that defendant's silence was intentional or ambiguous, then we would conclude that the court did not commit plain error and, as a result, we would affirm. In either case, the outcome would be the same as it would be under a pre-*Gornick* analysis.

Affirmed.