Submitted November 30, 2010, affirmed April 27, petition for review denied July 28, 2011 (350 Or 571)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT ELLIS HENDERSON,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0700686; A139516

255 P3d 661

Peter Gartlan, Chief Defender and Eric Johansen, Senior Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, Brewer, Chief Judge, and Landau, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his conviction for murder, ORS 163.115. He raises 10 assignments of error, nine of which we reject without discussion. In his sixth assignment of error, defendant argues that the trial court erred by denying his motion for a mistrial on the ground of prosecutorial misconduct. Defendant had moved for a mistrial after the prosecutor asked one of the investigating officers, on redirect examination, whether defendant had requested measurements of the damage that defendant's vehicle caused to the wall of a garage. The officer replied that the defendant had not requested any measurements. Defendant argues that the prosecutor's question impermissibly shifted to defendant the burden of presenting evidence of his own innocence and, thus, the trial court abused its discretion by denying his motion for a mistrial. We affirm.

The facts pertinent to defendant's motion for a mistrial are few, and, because defendant was convicted by a jury, we state the facts in the light most favorable to the state. *State v. Johnson,* 342 Or 596, 598, 157 P3d 198 (2007), *cert den,* 552 US 1113, 128 S Ct 906, 169 L Ed 2d 753 (2008); *State v. Worth,* 231 Or App 69, 218 P3d 166 (2009), *rev den,* 347 Or 718 (2010). On May 7, 2007, defendant drove with his passenger, Ontiveros, to defendant's former residence where his wife, the victim, was living. Defendant and the victim were estranged. The victim had filed an action for dissolution of their marriage, and defendant had moved out of the residence. Defendant stopped his Lincoln Navigator SUV alongside the curb of the residence for approximately four to five seconds. The victim was gardening in the front yard of the residence. Defendant could observe her from his vantage point. The garage door of the residence was open, and defendant could see a red Corvette sports car, which belonged to the victim, in the garage. Defendant leaned over to Ontiveros, tapped him on the knee, and said, "Watch this." Defendant pressed on the accelerator of the Navigator, causing the vehicle to speed forward, striking the victim and carrying her into the garage, where the Navigator struck the Corvette and the rear wall of the garage. The force of the impact killed the victim and knocked the garage off its foundation, partially collapsing the roof. Responding officers

found the victim pinned beneath the Navigator. The officers found defendant lying uninjured alongside the Navigator, repeatedly saying, "I want to die." Ontiveros, who was standing in the driveway, told the first officer who contacted him that "she's in there. He ran her over."

Defendant was charged with a single count of murder under ORS 163.115.[1] At trial, defendant argued that the police had conducted an inadequate investigation because they had jumped to the conclusion that he had intentionally murdered the victim. Because of that inadequate investigation, defendant argued, the police had failed to gather certain exculpatory physical evidence. That contention dovetailed with defendant's affirmative defense of extreme emotional disturbance ("EED") under ORS 163.135.[2] In part, defendant's EED theory was that, when he arrived at the residence and saw the red Corvette inside the garage, he had become enraged and decided to kill himself by crashing the Navigator into the Corvette. Defendant's counsel argued to the jury that the victim had been bent over behind a Japanese maple tree in the front yard of the residence and, because the Navigator was not high enough above the ground for defendant to see over the tree, defendant had not seen the victim before pressing the Navigator's accelerator.

Detective Burdick of the Milwaukie Police Department was one of several investigating officers on the scene on the morning of the crime. Burdick testified about the portions of

---

[1] ORS 163.115 provides, in pertinent part:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

[2] ORS 163.135 provides, in pertinent part:

"(1) It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance if the disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act and if there is a reasonable explanation for the disturbance. The reasonableness of the explanation for the disturbance must be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believed them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

the investigation that he had conducted, as well as his knowledge of what other investigators had done at the scene. During cross-examination, defendant's counsel pressed Burdick about the damage to the garage that defendant's vehicle caused.

"[Defense Counsel]: I will show you Defendant's Exhibit 185, a photograph of one of the walls that was damaged when a vehicle went through the garage; is that correct?

"[Burdick]: Right. That looks to be the garage wall.

"[Defense Counsel]: That was pushed out?

"[Burdick]: That was pushed out.

"[Defense Counsel]: Off the foundation?

"[Burdick]: Correct.

"[Defense Counsel]: And that's an accurate photograph, I believe somebody from your office took it?

"[Burdick]: I believe so. I don't remember from that angle.

"[Defense Counsel]: Now I'm going to show you what's been marked Defendant's exhibits 186 and 187. Does that also show you the garage, entry portion of the garage, where the Navigator would have entered in the garage?

"[Burdick]: Yes.

"\* \* \* \* \*

"[Defense Counsel]: Let's look at 186 and 187. The Navigator has struck the entryway to the garage door, didn't it?

"[Burdick]: I believe so.

"[Defense Counsel]: And that entryway damage is not noted on any photograph that you produced, is it?

"[Burdick]: Will you repeat that one more time please?

"[Defense Counsel]: That's the closest photographs we have of that entryway damage isn't it?

"[Burdick]: I'm not sure offhand.

"\* \* \* \* \*

"[Defense Counsel]: The total station, State's Exhibit 3 that I put up now, doesn't mark the damage on that wall does it?

"[Burdick]: I don't believe it does.

"[Defense Counsel]: There are no measurements whatever that say how high up on the wall it was damaged, are there?

"[Burdick]: I think you'd probably have to speak to the CRAFT folks that measured that scene. I'm having trouble testifying to that.

"* * * * *

"[Defense Counsel]: But you didn't measure, locate diagram, do anything with the damaged entryway area, did you?

"[Burdick]: Again, sir, I'm going to have to defer to the CRAFT team. I wasn't part of that aspect of the investigation.

"[Defense Counsel]: You spent four different trips driving from [defendant's apartment] to [the residence]. Correct?

"[Burdick]: Correct.

"[Defense Counsel]: And on each one of those trips, you ended up at that garage. Correct?

"[Burdick]: I pulled into the driveway by the front path. I don't think—I think I stopped probably 15 feet shy of the garage.

"[Defense Counsel]: On each of those trips, you could have gotten out of your vehicle and measured how high up on that wall the vehicle struck, couldn't you?

"[Burdick]: That's correct.

"[Defense Counsel]: And yet on none of the trips have you documented the damage that was done to the wall?

"[Burdick]: No sir."

On redirect examination the prosecutor asked Burdick.

"[Prosecutor]: Detective Burdick, [defense counsel] was asking you about damage to the garage wall of the [victim's] home, I think one of the sides of the garage wall. Do you see where I'm talking about?

"[Burdick]: Yes.

"[Prosecutor]: And he asked you if anybody had measured kind of the height that the damage was or taken measurement of that damage.

"[Burdick]: Yes.

"[Prosecutor]: Did anybody, either the state or the defense, ever ask you to take those measurements?

"[Burdick]: No."

After the last exchange, defendant immediately moved for a mistrial, arguing that "the only burden we have concerns the extreme emotional disturbance that we have filed. We hold no burden to gather evidence or to directing evidence. I believe that such is a direct comment, an attempt to shift the burden of proof to the defendant." The trial court denied defendant's motion:

"[The Court]: In this case, the defense is raising a defense of diminished capacity—bear with me just a moment. You also have a defense of extreme emotional disturbance. And the defense, by its cross-examination of Detective Burdick, has suggested by its questions that exculpatory evidence may exist in this case but for the inadequacies of the state's investigation, that evidence would be available for the defense to present at this trial. The question is whether it is appropriate rebuttal for the State to bring out evidence that suggests to the jury that the defendant, through his attorney, also had the means to gather exculpatory evidence.

"* * * * *

"Given that the defense has that burden in this case and given that by its questions of this [witness] it has suggested that there would be evidence available that is otherwise not available due to the inadequacies of the state's investigation, this court considers it to be appropriate rebuttal for

the State to bring out evidence that suggests to the jury that the defendant, through his attorney, also had the means to gather exculpatory evidence. That is my ruling."

Defendant was convicted by the jury. This appeal followed.

We review a trial court's denial of a motion for a mistrial for abuse of discretion. *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997). "The trial judge is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it." *State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996).

Defendant renews his argument on appeal, arguing that, during the redirect examination of Burdick, "[t]he prosecutor was essentially saying that defendant had the burden of establishing his innocence, that he has failed to meet that burden, and that he should be convicted of murder because he failed to do so." We disagree. *State v. Lincoln*, 250 Or 426, 443 P2d 178 (1968), is instructive. In *Lincoln*, the defendant had been charged with the burglary of a gas station and was apprehended at the scene by several police officers. *Id.* at 427. At trial, the state did not call as witnesses all of the officers at the scene when the defendant was apprehended, and the defendant's counsel argued to the jury that that omission demonstrated that "the state had not disclosed all of the information it possessed." *Id.* The district attorney argued, in rebuttal, that the defendant knew that he could have called the officers as witnesses. Defendant moved for a mistrial, which the trial court denied. The Supreme Court affirmed, holding that "[t]here is no rule which prevents the state from commenting on [a] defendant's failure to call witnesses other than the defendant which were available to him." *Id.*

We relied on *Lincoln* in *State v. Galloway*, 202 Or App 613, 123 P3d 352 (2005), *vac'd on other grounds*, 345 Or 315 (2008). In *Galloway*, the defendant moved for a mistrial after the prosecutor told the jury in closing argument, " '[I]n this trial you folks haven't heard a single thing about alibi.' " *Id.* at 620. The trial court denied the motion, and we affirmed. Relying on *Lincoln*, we concluded that

"[t]he prosecutor's argument to the jurors in the present case that they had heard no testimony regarding alibi was not a comment on defendant's decision to remain silent, but

rather to alert the jury that the defense had not put on *any* evidence regarding an alibi."

*Id.* (emphasis in original).

Although *Lincoln* involved a prosecutor's comment on a defendant's ability to call witnesses, its reasoning applies equally to the issue in this case, that is, defendant's ability to procure the measurements of the damage to the garage wall that was caused by his vehicle. The prosecutor's question to Burdick on redirect examination served the same purpose as the district attorney's jury argument in *Lincoln*: it alerted the jury to the fact that defendant could have procured the evidence that defendant had faulted the police for not gathering. The prosecutor was entitled to rebut defendant's implication that the state had failed to gather potentially exculpatory evidence because the investigating officers had jumped to the conclusion that defendant had intentionally murdered the victim. The prosecutor's narrow question to Burdick directly rebutted that implication. The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Affirmed.